USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 93-1718 UNITED STATES OF AMERICA, Appellee, v. MILLER M. BULLARD, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. A. David Mazzone, U.S. District Judge] ___________________ ____________________ Before Selya and Boudin, Circuit Judges, ______________ and Carter,* District Judge. ______________ ____________________ Warren R. Thompson, by Appointment of the Court, for appellant. __________________ Kevin J. Cloherty, Assistant United States Attorney, with whom __________________ Donald K. Stern, United States Attorney, was on brief for the United _______________ States. ____________________ October 20, 1994 ____________________ ____________________ *Of the District of Maine, sitting by designation. BOUDIN, Circuit Judge. On July 20, 1992, an armed man _____________ held up the Baybank branch at 285 Huntington Avenue in Boston, and escaped with approximately $421. Shortly thereafter, law enforcement agents arrested defendant- appellant Miller M. Bullard, who was then charged with one count of armed robbery of a federally insured depository institution, 18 U.S.C. 2213(a), (d). A jury convicted Bullard on October 22, 1992. He has appealed his conviction. We affirm. Bullard's trial lasted three days, and for a significant portion of that time, he represented himself. The district court had originally appointed counsel for him, but he objected to that appointment, and the court granted his motion to proceed pro se. The court also appointed Owen ______ Walker of the federal public defender's office to act as standby counsel. Walker sat with Bullard at the defense table throughout trial. Walker presented opening and closing arguments, and he also cross-examined the key government witness. Bullard's central claims of error concern issues not raised at trial. With one possible qualification, we review these claims for plain error, which encompasses only those errors that are both "plain" and involve either a miscarriage of justice or deviations that seriously impair the fundamental fairness and basic integrity of the trial -2- -2- proceedings. United States v. Olano, 113 S. Ct. 1770 (1993); _____________ _____ United States v. Griffin, 818 F.2d 97, 100 (1st Cir.), cert. ______________ _______ _____ denied, 484 U.S. 844 (1987). ______ Bullard first contends that even though he was representing himself, he was left out of a conference between counsel and the judge concerning the possible inattentiveness of one juror, thus violating his right to pro se ________ representation. During the trial, the district judge noticed that on one day an individual juror appeared to be somewhat less attentive than normal. When the jurors were excused, the district judge asked the juror in question to remain in the courtroom and then questioned the juror, in the presence of the prosecutor and Walker. The juror acknowledged that the night before, she had worked a double shift and was somewhat tired, but also asserted that she was perfectly capable of continuing. The court then excused the juror from the room and effectively invited the prosecutor and Walker to object to the juror's continuation if dissatisfied with her answers. Neither counsel objected to the juror's continuing. Walker himself noted that the juror had seemed to be "on the ball." The record does not reveal whether Bullard was in fact present during the conference, which was conducted in court. Bullard now asserts that he was absent for this conference (his brief cites only to a telephone call between Bullard and -3- -3- his appellate counsel). It is possible that the marshal or court security officer removed Bullard before the juror was questioned and also possible that some or all of the colloquy occurred at sidebar. The transcript is silent on these points. Since the record is unclear on this factual issue, there certainly is no "plain" error. Of course, one might argue that it is unfair to hold this lack of clarity against Bullard since he himself may not have been aware of the episode until he reviewed the trial transcript after his conviction. Still, if the issue were to be properly pressed on appeal, Bullard or his appellate counsel ought at least have asked the district court to supplement the record. See ___ Fed. R. App. P. 10(e) (allowing supplementation of district court record to correct mistake or omission). Out of an abundance of caution, we have considered whether Bullard was actually prejudiced, even assuming that he was absent during the episode. Of course, a defendant is normally entitled to be present during a court proceeding, and even more so when acting pro se. But here Bullard was at ______ least represented by standby counsel at the proceeding in question. Given that the record does not show Bullard was absent, we think that it goes as far as required, and arguably beyond, to ask whether his possible absence has ________ created demonstrable or likely prejudice. -4- -4- Here, we see no prejudice at all. A sharp-eyed trial judge, commendably attentive, noticed some signs that a juror might not have been fully alert. Sua sponte he questioned ___________ the juror who denied any illness, explained that she had had a late night, and in substance asserted her wish to continue. Probably, the attention of an average juror, perhaps all jurors, drifts at some point during a trial. The trial judge, who had seen the juror's actions, felt no need to press for or order her removal; and neither counsel asked for it. There is nothing to show that the juror missed crucial evidence or exhibited serious or prolonged inattention; Bullard says otherwise in his brief but provides nothing to support the assertion. The evidence against Bullard, which we need not describe in detail, was substantial; it included an eye witness identification of him as the bank robber, made by a teller who had been standing in the teller booth next to the one robbed. Any notion that Bullard was convicted because the juror in question was not excused is highly implausible. Bullard's other contentions relate to a brief encounter with a police officer before booking. Prior to Bullard's initial booking photograph, Detective Carroll of the Boston Police Department took a picture of him because Carroll had noticed at the arrest that Bullard wore a baseball hat with -5- -5- the brim cocked up--a style that Carroll felt was unusual and one depicted in the photographs derived from the film in the bank surveillance camera. Bullard refused to put his hat on when Carroll asked him to, but then relented and Bullard's photograph was taken with his hat on. During Carroll's trial testimony, he mentioned that Bullard had refused to put his hat on, and Bullard now alleges that such testimony violated his right against self- incrimination. The prosecutor also alluded to Bullard's refusal during her closing argument. In addition, before trial the prosecutor told the court that she had no statements of the defendant to turn over in discovery; Bullard now alleges that this was untrue (because his refusal was a statement) and constituted a violation of discovery obligations and misconduct by the prosecutor. None of these matters comes anywhere close to plain error. We start with Bullard's claim that his refusal to put on a hat was a statement that the prosecutor had to produce before trial. Bullard's refusal to put on his hat does not fit under the literal language of Fed. R. Crim. P. 16, which requires the government to turn over statements only if they were made in the course of interrogation. The rule has been so construed by the courts. See, e.g., United States v. ___ ____ ______________ Reeves, 730 F.2d 1189 (8th Cir. 1984). Certainly, the ______ failure to disclose in advance Carroll's testimony as to the -6- -6- refusal does not plainly violate any cited discovery rule or _______ order. Bullard also claims that it was misconduct for the prosecutor to advise the court before trial that "there are no statements of the defendant" and then to elicit at trial Bullard's refusal. Actually, it is not clear that Bullard did express his refusal in words, but there is certainly no indication of a conscious deception by the prosecutor. If Bullard was surprised by the detective's testimony and felt he had been misled, he was free to raise the point at trial and ask for a brief delay or continuance. Bullard's self-incrimination claim is similarly unavailing. Bullard properly does not complain on self- incrimination grounds about the government's use of the photograph showing him in his hat. It is well accepted that a defendant's Fifth Amendment right is not compromised by such physical evidence; a defendant can be obligated to give blood, stand in a lineup, provide handwriting examples and cooperate in other similar fashions. E.g., Schmerber v. ____ _________ California, 384 U.S. 757 (1966); Gilbert v. California, 388 __________ _______ __________ U.S. 218 (1967). What Bullard appears to argue instead is that his initial refusal to cooperate by putting on his hat amounts to using his own words--namely, his refusal to cooperate--against him as evidence of consciousness of guilt. The prosecutor did not urge this inference and referred to -7- -7- the refusal primarily in connection with an argument that Bullard and the robber wore their hats in the same way. Still, the inference is pretty obvious. In many circumstances, a defendant's refusal to speak with the police or answer questions is not allowed to be used against him. The concern is not that the silence or words of refusal are themselves compelled testimony, for the silence or words of refusal are not compelled. Rather, the fear is that using the refusal against the defendant would place undue and inappropriate pressure upon him to surrender his or ________ her constitutional right to remain silent. In some cases, an inference from silence could also be unfair for a different reason; the Supreme Court has said that a Miranda warning _______ carries the implication that there is no penalty for silence, and the defendant may reasonably rely on the assurance. Doyle v. Ohio, 426 U.S. 610, 618 (1976). _____ ____ The present case is quite different. Bullard had a Fifth Amendment right to remain silent but he had no such right to refuse to don a hat, stand in a lineup, or provide fingerprints. Since he had no such right, then to draw inference of guilt from his refusal to cooperate physically does not place improper pressure on him to surrender a protected right. Nor does a Miranda warning promise or imply _______ that a defendant can with impunity refuse to put on a hat. -8- -8- Of course, in some situations a refusal to cooperate by providing physical evidence may be defended because cooperation would itself reveal the content of the defendant's mind. See, e.g., Fisher v. United States, 425 ___ ____ ______ _____________ U.S. 391, 410 (1976); In re Kave, 760 F.2d 343, 358 (1st Cir. __________ 1985). But this case involves no such danger. As for the logic of the inference, an inference based on a refusal to cooperate where cooperation itself can be compelled and would be expected from an innocent person, is no different than an inference of guilt based on flight to avoid arrest. We do not want to be understood as giving blanket approval to testimony of a defendant's refusal to cooperate in physical activities. An inference of guilt might be irrational in some circumstances (e.g., a defendant refusing ____ to submit to a dangerous operation to recover evidence against him). There may be a range of other cases where testimony or comment about a defendant's refusal to cooperate in physical activities could be unduly prejudicial or threaten constitutional rights. But no such situation is apparent here, and there is certainly no plain error. Affirmed. ________ -9- -9-