USCA1 Opinion

 

 July 18, 1996 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 95-1123 UNITED STATES, Appellee, v. MOJISOLA A. BIODUN ADEKOYA, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. William G. Young, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Campbell, Senior Circuit Judge, ____________________ and Lynch, Circuit Judge. _____________ ____________________ Robert M. Greenspan, for appellant. ___________________ Paula J. DeGiacomo, Assistant United States Attorney, with whom ___________________ Donald K. Stern, United States Attorney, was on brief for appellee. _______________ ____________________ ____________________ Per Curiam. Defendant-appellant Mojisola Biodun ___________ Adekoya, a Nigerian woman traveling from Nigeria by way of Switzerland to the United States, was arrested at Logan Airport in Boston on October 10, 1993 after a customs inspection of her baggage revealed two kilograms of heroin. Following a three-day jury trial, she was convicted of importation and possession of heroin with intent to distribute, in violation of 21 U.S.C. 952(a) and 841(a)(1) and 18 U.S.C. 2. Adekoya challenges her convictions, claiming the district court inadequately questioned prospective jurors about possible race- and nationality-based bias, denied her the right to be present during the questioning of certain jurors, and failed to define "reasonable doubt" in the instructions to the jury. Finding that the court did not commit reversible error, we affirm. Adekoya argues that the district court should have included among the questions it asked the venire the following question proposed by defense counsel: whether any prospective juror had "any fixed opinions, biases or prejudices about Black people which would affect your ability to render a fair and impartial verdict in this case based solely on the law and evidence in this case?" Defense counsel suggested this question in writing along with more than twenty others on the day trial commenced, but never thereafter requested that the court ask it, even after the -2- 2 court had questioned the jurors more generally about possible bias.1 Nor did the defendant raise the argument she advances now, that, had her race-specific question been asked, other questions might have followed which would have allowed her to probe bias stemming from the fact that she was a Nigerian national -- a fact that, rather than her race, forms the basis for her argument on appeal. Such bias, defendant says, could have stemmed from panel members' awareness of a few court opinions, unrelated to this case, which refer to Nigeria as a drug source country. Because defendant did not properly preserve an objection to the district court's questioning, we review for plain error only. See United States v. Olano, 507 U.S. 725, 732 (1993). ___ _____________ _____ Generally, a trial court has considerable discretion in conducting voir dire and "need not pursue any specific line of questioning . . . provided it is probative on the issue of impartiality." United States v. Brown, 938 _____________ _____ F.2d 1482, 1485 (1st Cir.), cert. denied, 502 U.S. 992 _____________ (1991); see also Fed.R.Crim.P. 24(a) (a court conducting voir ________  ____________________ 1. The district court asked the venire in open court: Are any of you sensible of any bias or prejudice whatsoever with respect to this case? When I say are you sensible of it I mean are you aware of any, do you know of any? Do you know of any reason why you do not stand indifferent in this case? When I say stand indifferent, I'm trying to search out any feelings about these people or me, because you've met us, feelings about the criminal justice system, feelings about these particular charges. -3- 3 dire shall permit the defendant or the attorneys "to supplement the examination by such further inquiry as it ______ deems proper or shall itself submit to the prospective jurors ____________ such additional questions by the parties or their attorneys as it deems proper[]") (emphasis supplied); Rosales-Lopez v. ___________________ _____________ United States, 451 U.S. 182, 189 (1981) (plurality) (as voir _____________ dire examinations "rely largely on . . . immediate perceptions, federal judges have been accorded ample discretion in determining how best to conduct the voir ____ dire[]"). ____ When the circumstances of the trial indicate that racial or ethnic prejudice is likely, however, it is advisable for the court to question jurors on such bias. See ___ Brown, 938 F.2d at 1485 (citing Ristaino v. Ross, 424 U.S. _____ ________ ____ 589, 597 n.9 (1976)). The federal Constitution requires a specific inquiry into racial bias when racial issues are "'inextricably bound up with the conduct of the trial'" or "substantial indications of the likelihood of racial or ethnic prejudice affecting the jurors" are present. Rosales- ________ Lopez, 451 U.S. at 189-190 (quoting Ristaino, 424 U.S. at _____ ________ 596). Apart from constitutional considerations, an appellate court, in the exercise of its supervisory authority over the federal courts, should find reversible error if a lower court does not acquiesce in a defendant's request for a specific inquiry into racial bias and there is a "reasonable -4- 4 possibility that racial or ethnic prejudice might have influenced the jury." Id. at 191. ___ After examining the record, we discern no error, let alone plain error, in the district court's failure to ask the question submitted by counsel or to frame a question sua sponte going to Nigerian nationality. To prove the importation charge, the government had to show that defendant traveled to the United States from Nigeria; her Nigerian passport and airline ticket were accordingly introduced as evidence. The bulk of the government's case, however, came from U.S. Customs and Immigration employees, who testified to the suspicious circumstances (independent of her passport) that led to their further inspection of her luggage; from a forensic chemist with the Drug Enforcement Administration, who testified to the nature of the seized controlled substance and the chain of custody; and from a person who lived at the Chelsea, Massachusetts address that defendant named as her relative's home and her own destination, who testified that she did not know the defendant. Adekoya, testifying in her own defense (in English), made several references to Nigeria,2 but also stated that she had been in  ____________________ 2. For example, she stated that her roundtrip ticket had been purchased by a relative in Nigeria; she had made the trip to prepare with family for her engagement to a fiance who remained in the Washington D.C. area for lack of traveling papers; her family had packed her bags for the return trip to the United States; and she had required new luggage for the return trip because her bags were lost when -5- 5 the United States since 1980 (except for a few trips home), and most recently lived in Maryland and worked as a nursing assistant and homemaker. Her defense was essentially that she did not pack her own bags, that her anxiety at the airport was due to medications and coffee, and that there was some doubt as to whether the authorities had mishandled the substance that tested positive for heroin.  Nothing causes this case to fall within the limited category of cases in which a specific inquiry concerning racial bias is constitutionally required. See, e.g., Brown, _________ _____ 938 F.2d at 1485 (unlike cases involving a racially charged defense or jury deliberations that are unique or highly subjective, no specific inquiry into racial bias was constitutionally required where defendant charged with altering notes was a young black male and all government witnesses and jurors were white). The circumstances at trial, including the evidence pertaining to defendant's nationality, do not indicate "a reasonable possibility that racial or ethnic prejudice might have influenced the jury." Rosales-Lopez, 451 U.S. at 191. While some references were _____________ made to defendant's home country and culture, more would be needed to create a "reasonable possibility" on these facts  ____________________ she arrived in Nigeria and encountered turmoil at the airport. Adekoya also attempted to correct a possible inconsistency in her statements about whom she was visiting in Chelsea by saying that in Nigeria, a "cousin" is sometimes called a "sister." -6- 6 that the jury was influenced by prejudice. See, e.g., id. at _________ ___ 192-194 (interracial crime satisfies "reasonable possibility standard," but racial or ethnic difference between defendant and key government witness did not); United States v. Kyles, _____________ _____ 40 F.3d 519, 525 (2d Cir. 1994) (though cases of interracial violence generally require a specific inquiry into racial bias, circumstances of armed robbery "did not rise to the level of violence that would likely ignite a jury's potential prejudices[]"), cert. denied, 115 S. Ct. 1419 (1995). There _____________ is nothing to support defendant's contention that the jurors were likely to be aware of cases that have referred to Nigeria as a drug source country. See United States v. ___ ______________ Okoronkwo, 46 F.3d 426, 434 (5th Cir.) (rejecting similar _________ assertion that local public bias against Nigerians warranted a specific inquiry into nationality-based bias where Nigerian defendants were charged with conspiracy to commit tax fraud), cert. denied, 116 S. Ct. 107 (1995) and 116 S. Ct. 958 _____________ ___ (1996). The prosecution did not highlight defendant's national origin, referring to it no more than in connection with the charge of importation. Nor was the evidence presented by either side the type that created a reasonable possibility that race- or nationality-based prejudice might -7- 7 have influenced the jury.3 A more specific inquiry during voir dire was not required. Defendant also asserts that her rights under the Fifth and Sixth Amendment and under Fed.R.Crim.P. 434 were violated when she was allegedly not permitted to be present at sidebar for the court's individual questioning of prospective jurors. The sidebar was held after the district judge posed several questions to the venire in open court and stated that any juror answering a question affirmatively should line up to meet with him. The court also invited counsel to the bench. Defense counsel then asked, "Your Honor, do you want the defendant present?", to which the court responded, "I don't think it's necessary. It's all on the record." At no point did the defendant or her counsel tell the court that the defendant actually wanted to participate at sidebar or object to the procedure the judge announced in open court that he would follow. Defendant  ____________________ 3. Cf. United States v. Alzanki, 54 F.3d 994, 1007 & n.14 ___ _____________ _______ (1st Cir. 1995) (noting approvingly the district court's careful inquiry into ethnic- or nationality-based bias during jury impanelment in an involuntary servitude case where jury heard evidence of repressive Kuwaiti customs and practices toward domestic workers), cert. denied, 116 S. Ct. 909 _____________ (1996). 4. Rule 43 provides: (a) Presence Required. The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule. -8- 8 remained in the courtroom throughout the questioning, but was apparently unable to see or hear the jurors at the sidebar. Following the questioning,5 removals for cause, and peremptory strikes, only two venire members who had approached the bench became actual jurors. At the end of jury selection, in response to the court's inquiry, defense counsel stated, "The panel is acceptable to the defense, Your Honor." Because defendant's claim may be resolved on statutory grounds, we need not discuss her constitutional arguments.6 Federal Rule of Criminal Procedure 43(a) provides that a defendant's presence is required "at every stage of the trial including the impaneling of the jury . . . ." Assuming a sidebar conference during voir dire is a "stage of the proceeding" at which defendant's presence is required, cf. United States v. Gagnon, 470 U.S. 522, 527 ___ ______________ ______ (1985) (assuming arguendo that defendants had a right under Rule 43 to be present at court's conference with a juror about his continuing impartiality), a strong argument can be  ____________________ 5. The questions centered around whether a prospective juror was inclined to favor or disfavor testimony by law enforcement officers and whether she or he could be fair and impartial. 6. Defendant's right under Rule 43 to be present at trial proceedings is broader than the constitutional right alone. See United States v. Gagnon, 470 U.S. 522, 526-527 (1985); ___ ______________ ______ United States v. Gordon, 829 F.2d 119, 123 (D.C. Cir. 1987) _____________ ______ (citing circuit cases). -9- 9 made that she waived her right to be present, though we need not decide the issue, see infra. The district court ___ _____ announced in open court, in defendant's presence, that it would question individually the venire members who answered "yes" to any of the general questions. In response to counsel's query whether the court "want[ed]" the defendant present, the court said it did not think defendant's presence was necessary, but in no way indicated hostility to allowing the defendant to be present if she had so requested. No objection or express request for defendant to be present at sidebar followed. See id. at 528 (absence of objection to, ___ ___ or request to be present at, a conference that the court announced it would hold with a juror, and which one defendant's counsel attended, constituted waiver of any personal right to presence under Rule 43); but see United _______ ______ States v. Gordon, 829 F.2d 119, 126 n.8 (D.C. Cir. 1987) ______ ______ (distinguishing Gagnon and requiring on-the-record personal ______ waiver where right to be present concerns the jury impanelment stage and is grounded in both the Fifth Amendment and Rule 43). We need not decide if an effective waiver occurred since we can see no harm or prejudice to the defendant by her absence at sidebar when these individual jurors were questioned. Adekoya heard and observed the initial general questioning by the court, and her counsel was present -10- 10 throughout the sidebar portion. At the latter, the district court questioned nineteen prospective jurors, excluded five for cause, and permitted the government and defense counsel to exercise numerous peremptory challenges. Only two of the nineteen were selected to be jurors. Adekoya subsequently heard and observed these two along with other panel members being questioned in open court concerning their places of employment and spouses' places of employment. In the absence of any objection to either the jurors or the process, and given defense counsel's assurance to the court at the end of jury selection that the panel was acceptable to the defense, the district court had no reason to believe that the defendant was dissatisfied, and indeed nothing that then occurred indicates she was. We can see no reversible error. See United States v. Pappas, 639 F.2d 1, 2-3 (1st Cir. 1980) ___ _____________ ______ (district court's exclusion of counsel and court reporter from individual voir dire, while disfavored, did not prejudice defendant where her counsel had ample challenges available and further opportunity to observe and to question prospective jurors but did not do so), cert. denied, 451 U.S. ____________ 913 (1981).7 Moreover, the very substantial evidence  ____________________ 7. See also United States v. Washington, 705 F.2d 489, 498 ________ _____________ __________ (D.C. Cir. 1983) (exclusion of defendant from individual voir dire was harmless error under Rule 43 where she was present in the courtroom the entire time, a limited portion of the voir dire was conducted at the bench where she was represented by counsel, she had time to confer with counsel about jurors' responses at the bench, and substantial -11- 11 against the defendant on the drug importation and possession counts makes it highly unlikely that she was convicted because the two jurors questioned at sidebar had some unfavorable characteristic that defendant could have discerned had she been present at the time. Cf. United ___ ______ States v. Bullard, 37 F.3d 765, 767-768 (1st Cir. 1994) (pro ______ _______ se defendant's absence from court conference inquiring into a juror's attentiveness was not prejudicial where standby counsel participated in the conference, evidence against the defendant was substantial, and nothing indicated that the juror had missed crucial evidence), cert. denied, 115 S. Ct. ____________ 1809 (1995). Lastly, defendant contends that the court erred in instructing the jury that the government must prove its case "beyond a reasonable doubt" without defining or explaining "reasonable doubt." As defense counsel expressly agreed to the charge both before and after it was given, we review for plain error only. Having examined the record, we conclude that the instruction "adequately apprise[d] the jury of the  ____________________ evidence supported a finding of guilt); United States v. _____________ Alessandrello, 637 F.2d 131, 139-143 (3d Cir. 1980), cert. _____________ _____ denied, 451 U.S. 949 (1981); United States v. Dioguardi, 428 ______ _____________ _________ F.2d 1033, 1039-1040 (2d Cir.), cert. denied, 400 U.S. 825 _____________ (1970); cf. Gordon, 829 F.2d at 127-129 (distinguishing the ___ ______ above cases and holding that exclusion of defendant in custody from entire jury selection process was not harmless error, where he would have sought to challenge a juror with personal and family connections to law enforcement, and jury first saw defendant midway through the first day of trial).  -12- 12 proper burden of proof." See United States v. Olmstead, 832 ___ _____________ ________ F.2d 642, 646 (1st Cir. 1987), cert. denied, 486 U.S. 1009 ____________ (1988). Affirmed. _________ -13- 13