**UNITED STATES of America, Appellee,**

v.

**Frederick Gordon
DODDINGTON, Appellant.**

**No. 86–5186.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 12, 1986.

Decided July 8, 1987.

Barry V. Voss, Minneapolis, Minn., for appellant.

Joan M. Ericksen, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Before McMILLIAN, BOWMAN, and MAGILL, Circuit Judges.

BOWMAN, Circuit Judge.

Frederick Gordon Doddington appeals from the District Court's entry of judgment and sentence following a jury verdict of guilty on one count of possessing and aiding and abetting the possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. On appeal Doddington argues that (1) the District Court deprived him of his Fifth Amendment right to due process of law and his Sixth Amendment right to compulsory process when it refused to grant "judicial immunity" to a defense witness and thereafter instructed the jury to disregard completely the testimony of that witness after the witness persisted in invoking his Fifth Amendment privilege against self-incrimination and (2) the District Court abused its discretion when it admitted into evidence certain prosecution evidence for which the chain of custody had not sufficiently been established. We affirm.

## I.

On July 25, 1985, Edina, Minnesota police officer Christopher Omodt observed a car with a license plate that appeared to have been altered. Omodt stopped the car and arrested the driver, Gary Mattson, after discovering that the vehicle registration and Mattson's driver's license had been revoked. While Mattson was being placed in the police car, Doddington (who was a passenger in the Mattson car) requested and received permission from Omodt to move the car out of the flow of traffic. Officer Omodt thereafter viewed Doddington making reaching motions toward the back seat and under the front seat. When Omodt went to investigate, Doddington approached him carrying two dark nylon bags. When Officer Omodt asked about the contents of the bags, Doddington held them behind his back in an apparent attempt to shield them from view and responded, "They're Gary's. He asked me to get them for him." Omodt demanded and received the two bags. As Omodt opened the first bag (Bag A, Government Exhibit (Ex.) 1–A), Doddington stated, "You can't look in the bags. They're out of the car." Officer Omodt proceeded to search the bag and discovered, *inter alia*, several yellow valium tablets and Doddington's driver's license. Doddington then was placed under arrest. A search of the second bag (Bag B, Ex. 2–A) disclosed approximately $10,000 in $20 and $100 bills, several packets of a white powder later determined to be methamphetamine, a contact lens case containing some valium tablets, a scale, a silver spoon, and two magazines with Doddington's name and address on the mailing label. After apprising Doddington of his *Miranda* rights, Officer Omodt asked him to whom the valium belonged. Doddington responded, "The valium is mine." He also stated that he was in the process of changing the $20 bills into $100 bills for an unidentified friend.

During a subsequent search incident to the arrest, Officer Robert Buie found a small pouch around Doddington's neck that contained a small plastic packet of white powder and $1030 in cash. After placing the white powder and money in plastic evidence envelopes, Officer Buie sealed the envelopes and inventoried the evidence.

He then gave the evidence to a Sergeant Cane, who secured it in an evidence locker.

At trial Jack Raney, a forensic chemist for the Drug Enforcement Administration (DEA), testified that he analyzed the 110 grams of white powder found in Bag B (Ex. 2–D) and the 1.2 grams of white powder found in Doddington's neck pouch (Ex. 3–B) and determined that both substances were methamphetamine. Raney stated that Ex. 2–D was 27% pure and that Ex. 3–B was 25% pure, and opined that both exhibits could have come from the same source.

## II.

### A.

Doddington first asserts that the District Court's refusal to grant "judicial immunity" to Gary Mattson, an unindicted coconspirator who was called as a witness on behalf of the defense, deprived him of his Sixth Amendment right to compulsory process. Specifically, Doddington argues that the District Court's denial of judicial immunity to Mattson, whose testimony allegedly was consistent with Doddington's defense and would have exculpated Doddington and provided favorable inferences regarding ownership of the drugs found in Mattson's car, precluded him from presenting an effective defense at trial. Doddington also argues that the District Court's striking of Mattson's testimony in its entirety after Mattson persisted in asserting his Fifth Amendment privilege against self-incrimination (thus precluding cross examination by the government) denied him due process of law and was an abuse of discretion.

At trial, Gary Mattson was subpoenaed and called as a witness by the defense. He had not testified during the prosecution's case-in-chief. Prior to his testifying, the court asked Mattson whether he intended to invoke his Fifth Amendment right against self-incrimination. After conferring with an attorney, he agreed to testify. On direct examination by defense counsel, Mattson acknowledged that he was the owner of the car in which he and Doddington were riding when they were arrested.

He testified that after his arrest he told Officer Omodt that the second nylon bag (Bag B, Ex. 2–A, which contained Ex. 2–D, the 110 grams of methamphetamine) belonged to him and that his Lark cigarettes (which he had requested immediately after his arrest) could be found in that bag. Mattson apparently was not shown or told of the contents of the bag before being asked by Omodt whether he owned it. Mattson testified that he had a prior drug conviction for possession of LSD and previously had "dropped speed" (methamphetamine). He was asked by defense counsel if the glasses he then was wearing were prescription glasses. Following his affirmative response, defense counsel asked whether he owned the contact lens case (Ex. 2–G) that was found in the second bag (Bag B, Ex. 2–A). Mattson immediately invoked his Fifth Amendment privilege. At a bench conference Mattson's attorney told the court that his client possibly would answer questions on other subjects, but not any questions regarding the contact lens case. The court stated, "The problem is that it puts the government in a very awkward position, because that jury could well infer that his taking the Fifth could involve his ownership and possession of the drugs that are [the] gravamen of this case." Trial Transcript (Tr.) 305. The court ruled that defense counsel's questioning could continue provided that no reference to the contact lens case be made. Mattson then was asked about several items found in the trunk of his car (some of which were illegal drugs and drug paraphernalia), and he again invoked his Fifth Amendment privilege.

During a short recess, Mattson's attorney informed the court and counsel that Mattson would assert his Fifth Amendment privilege against self-incrimination to all questions asked by either defense counsel or the government. The court then stated, "Under those circumstances, pursuant to *U.S. versus Cardillo,* 316 F.2d 606 [2nd Cir.1963], I will instruct the jury to completely disregard his testimony." Tr. 310–311. Defense counsel objected and argued that the court's ruling denied Doddington

his "right to confront his accuser." Defense counsel then stated:

> I think it's extremely important for the defense to be able to present a defense and get a fair trial. For that reason, I would ask this Court to require the government to grant Mr. Mattson immunity.... I don't have case law to indicate that this Court has the authority to order it, but I do think that in the interest of justice and so that this jury gets all [the] facts, the prosecutor is in a position to grant this witness immunity....

Tr. 312. The court stated that it did not have the authority and was not in a position to order the government to grant immunity to Mattson and denied defense counsel's request. Mattson then returned to the witness stand and invoked his Fifth Amendment right to three consecutive questions asked by defense counsel. Mattson invoked the privilege twice to three questions on cross examination by the government. The court then excused Mattson and instructed the jury to disregard his entire testimony since the government had no opportunity to cross examine him on any matters testified to on direct examination.

We can summarily reject Doddington's first point on appeal regarding the court's refusal to grant judicial immunity. It is clear from the trial transcript (the relevant portion of which was quoted above) that Doddington's defense counsel requested the court to order the government to grant *statutory* immunity to Mattson, and not judicial immunity as he now claims on appeal that he did.[1] Thus, we will review only the District Court's ruling on the issue of statutory immunity under an abuse of discretion standard.

A procedure for the granting of use immunity with respect to potentially incriminating testimony is provided in 18 U.S.C. §§ 6002 & 6003. This statute, however, is of no avail to Doddington. The Supreme Court has held that statutory immunity may be granted only at the request of the Attorney General or a designated officer of the Department of Justice. "No court has authority to immunize a witness." *Pillsbury Co. v. Conboy*, 459 U.S. 248, 261, 103 S.Ct. 608, 616, 74 L.Ed.2d 430 (1983); *see also United States v. Doe*, 465 U.S. 605, 616, 104 S.Ct. 1237, 1244, 79 L.Ed.2d 552 (1984) ("We decline to extend the jurisdiction of courts to include prospective grants of use immunity in the absence of the formal request that the statute requires."). Thus, the District Court had no authority (as it correctly recognized) to order the government to grant statutory immunity to Mattson. The court's refusal to order the government to grant immunity did not amount to a denial of Doddington's Sixth Amendment right to compulsory process (or of his right to confront witnesses against him, as defense counsel suggested at trial, since Mattson was called as a defense witness and did not testify for the prosecution).

---

1. The issue of judicial immunity is raised by Doddington for the first time on appeal. Therefore, we will review that issue under the plain error standard. Having carefully reviewed the trial transcript, we find no plain error in the District Court's decision not to grant "judicial immunity" to Mattson *sua sponte*. Judicial immunity has not been recognized in this Circuit. The cases cited by Doddington, *see United States v. Saettele*, 585 F.2d 307, 310–314 (8th Cir.1978) (Bright, J., dissenting), *cert. denied*, 440 U.S. 910, 99 S.Ct. 1220, 59 L.Ed.2d 458 (1979); *United States v. Hardrich*, 707 F.2d 992, 993–994 (8th Cir.), *cert. denied*, 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983), are of no help to him in the circumstances of this case. In *Saettele*, Judge Bright suggested in dissent that a defendant might be denied a fair trial in a case where the government immunizes its witnesses but thereafter declines to offer immunity to the defendant's witnesses. 585 F.2d at 310–314. Here, the government established its case against Doddington without calling Mattson as a witness or granting immunity to any of its witnesses. In *Hardrich*, the Court suggested that a court would have inherent authority to grant "judicial immunity" to a defense witness only if it "is clear that the proffered testimony [is] clearly exculpatory." 707 F.2d at 994. Here, defense counsel stated that he never had discussed the case with Mattson. Thus, it would be difficult to establish whether Mattson's testimony would be "clearly exculpatory." Moreover, even assuming *arguendo* that Mattson admitted ownership of all the drugs found in his car, such testimony would not be inconsistent with the government's aiding and abetting theory, as charged in the indictment and in the jury instructions.

■ We also reject Doddington's argument that the District Court abused its discretion and denied him due process of law when it struck Mattson's testimony in its entirety after Mattson persisted in asserting his Fifth Amendment privilege against self-incrimination. We find the Second Circuit's reasoning in *United States v. Frank*, 520 F.2d 1287 (2d Cir. 1975), *cert. denied*, 423 U.S. 1087, 96 S.Ct. 878, 47 L.Ed.2d 97 (1976), persuasive. In *Frank* a witness called to testify by a codefendant perjured himself on direct examination. The perjured testimony was favorable to the defendant Frank. On cross examination, the witness was confronted with evidence that contradicted what he had testified to on direct. The witness thereafter asserted his Fifth Amendment privilege and refused to answer questions on cross examination. The trial court struck all of the witness' testimony that would have been favorable to the defendant. The Second Circuit affirmed, stating that the witness' refusal to answer proper, relevant questions on cross examination "going directly to the heart of his testimony on direct examination" caused his direct testimony to become hearsay since it was not subject to cross examination. Thus, the trial court properly struck the witness' testimony. *Id.* at 1292. For the same reasons, the District Court here properly struck Mattson's testimony. Clearly Doddington would like to benefit from the inferences the jury could draw from Mattson's invocation of his Fifth Amendment privilege. But a defendant does not have the right to call a witness to the stand simply to force invocation of the right against self-incrimination in the presence of the jury. *United States v. Lyons*, 703 F.2d 815, 818 (5th Cir.1983). "Neither side has the right to benefit from any inferences the jury may draw simply from the witness' assertion of the privilege either alone or in conjunction with questions that have been put to him." *United States v. Johnson*, 488 F.2d 1206, 1211 (1st Cir.1973).

### III.

■ Doddington next argues that the District Court abused its discretion in admitting into evidence Ex. 3–B, a white powder analyzed as methamphetamine that the government alleged was found in a pouch around Doddington's neck. Specifically, he argues that the government did not establish a sufficient chain of custody for the admission of Ex. 3–B.

Testimony adduced at trial revealed that Officer Buie found and seized a packet of white powder and $1030 in cash from a pouch around Doddington's neck. Officer Buie placed the packet of powder in an evidence envelope, sealed the envelope, inventoried the contents, and marked the bag in which the white powder was found. Buie testified that he gave the evidence envelope to Sgt. Cane, who placed it in an evidence locker. DEA Agent Michael Leonard later removed the envelope from the evidence locker and mailed it to the Chicago DEA laboratory for analysis. DEA Chemist Raney testified that the envelope was intact and sealed upon his receipt of it. He opened the evidence envelope and removed the plastic packet of white powder, analyzed it and determined that it was methamphetamine, and sent the original plastic packet to fingerprinting.

The basis of Doddington's objection at trial to the chain of custody of Ex. 3–B is that the government did not produce Sgt. Cane to testify that he personally secured the evidence envelope received from Officer Buie in an evidence locker. Thus, he argues, the chain of custody was not sufficiently established, and the white powder itself and DEA chemist Raney's testimony regarding his analysis of it were improperly admitted.[2]

The admission of evidence is within the discretion of the district court; the scope of

---

2. Doddington argues that Ex. 3–B was a significant piece of circumstantial evidence in the government's case. The government, he argues, tried to establish the element of his knowing and intentional possession of the 110 grams of methamphetamine (27% purity) (Ex. 2–D) found in the second bag (Bag B, Ex. 2–A) by showing that 1.2 grams of methamphetamine (25% purity) (Ex. 3–B) were found in his neck pouch. DEA Agent Raney testified it was possible that Ex. 3–B and Ex. 2–D came from the same source. Tr. 116.

appellate review is whether that discretion has been abused. *United States v. Brown,* 482 F.2d 1226, 1228 (8th Cir.1973). We have carefully reviewed the trial transcript and the entire record on appeal, and we cannot say that the District Court abused its discretion in admitting Exhibit 3–B.

It is clear that the exhibit was properly admitted into evidence if it was "in substantially the same condition as when the crime was committed." *United States v. Anderson,* 654 F.2d 1264, 1267 (8th Cir.), *cert. denied,* 454 U.S. 1127, 102 S.Ct. 978, 71 L.Ed.2d 115 (1981). It generally is presumed that government officials have preserved the integrity of the evidence and have not tampered with it. *United States v. McCowan,* 706 F.2d 863, 865 (8th Cir. 1983). When a defendant submits proof of tampering of the evidence or of improper motivation of government officials, the burden shifts to the government to show that "precautions were taken to maintain the evidence in its original state." *Anderson,* 654 F.2d at 1267.

Though Sgt. Cane did not testify that he personally placed the envelope in the evidence locker, Officer Buie testified (without objection from Doddington) that he gave Ex. 3–B (the white powder) to Cane, who placed it in an evidence locker. Thus, there was evidence to support the District Court's finding that the chain of custody of Ex. 3–B had sufficiently been established. On these facts, we hold that the District Court did not abuse its discretion in admitting Ex. 3–B into evidence.[3]

AFFIRMED.

---

**3.** On appeal Doddington makes several challenges to the admission of Ex. 3–B. At trial, however, defense counsel objected only on the ground of foundation (chain of custody) and stated as the basis for his objection the fact that Sgt. Cane did not testify. Tr. 151–152. Thus, that is the only ground we will review under an abuse of discretion standard. A foundation objection must be specific, and a defendant may not raise on appeal a ground not mentioned at the time of his objection. *United States v. Wagoner,* 713 F.2d 1371, 1377 (8th Cir.1983). We have carefully reviewed Doddington's other challenges to Ex. 3–B, but find no plain error resulting in a miscarriage of justice from its admission.

Finally, Doddington also contends that the prosecutor's references in closing argument and in rebuttal to Ex. 3–B as methamphetamine constituted improper argument of facts not in evidence, thereby prejudicing him. Having found the chain of custody of Ex. 3–B to have been sufficiently established, we hold *a fortiori* that the prosecutor's references to the white powder in Ex. 3–B as methamphetamine clearly was not improper.