No. 95-3380

United States of America,   *
                            *
                Appellee,   *
                            *   Appeal from the United States
        v.                  *   District Court for the
                            *   Western District of Missouri.
Melvin Joe Montgomery,      *
                            *
               Appellant.   *


Submitted:  September 13, 1996

Filed:  November 22, 1996


Before BEAM, HEANEY, and JOHN R. GIBSON, Circuit Judges.


HEANEY, Circuit Judge.


Melvin Joe Montgomery appeals from his conviction for possession with intent to distribute cocaine in violation of 21 U.S.C. § 841.  Montgomery's primary contention on appeal is that the district court erred in failing to require two defense witnesses who intended to assert their Fifth Amendment privilege against self-incrimination to try on clothing that the government alleged belonged to Montgomery.  Because we agree that the court should have permitted the defense to have the witnesses try on the clothing, we reverse Montgomery's conviction.[1]

---

[1]Montgomery also argues that the district court improperly imposed an enhancement for obstruction of justice under section 3C1.1 of the sentencing guidelines because it failed to make specific findings as required by United States v. Dunnigan, 507 U.S. 87 (1993).  Given our resolution of the Fifth Amendment issue, we need not consider Montgomery's sentencing issue on this appeal.

On October 25, 1994, Montgomery travelled by train from Los Angeles, California to Memphis, Tennessee, via Chicago, Illinois with Sir Lancelot Barnes, the brother of his long-time friend Johnnie Barnes. Because the two were travelling from a source city for cocaine on one-way tickets purchased at the last minute through a travel agency, a detective from the Albuquerque Police Department Drug Task Force flagged the travel as "suspicious" and indicative of drug courier activity. He contacted detectives in Kansas City, Missouri, to investigate the matter. When the train stopped in Kansas City, the detectives boarded the train, went to Montgomery's and Barnes's sleeper car, and announced that they were looking for narcotics. Montgomery and Barnes consented to the search of their luggage. In one of Montgomery's bags, the detectives found 996.3 grams of cocaine, wrapped in two shirts. They arrested both men.

Montgomery was charged with possession with intent to distribute cocaine in violation of 21 U.S.C. § 841.[2] His first jury trial ended in a mistrial because the jury was unable to reach a unanimous verdict. A second jury convicted him of the instant offense. His defense to the charge at both trials was that he did not knowingly possess the cocaine. Montgomery testified that the cocaine--and the two shirts wrapped around it--did not belong to him and that he had never seen the bundle before the officers pulled it out of his bag.

At the second trial, the government had Montgomery try on both of the shirts for the jury. Montgomery's counsel requested that Johnnie and Sir Lancelot Barnes try on the same two shirts. The government argued that the evidence was irrelevant and highly

---

[2]According to the government, there was no pending investigation or charge against Barnes stemming from this incident as of Montgomery's trial.

2

prejudicial because it was known that both men intended to plead the Fifth Amendment.[3]  Montgomery responded that the government put the clothing squarely at issue by having the defendant try on the shirts.  He further argued:

> I would submit they do not have a right not to put the shirts on.  The Fifth Amendment only goes to testamentary evidence.  It does not go to physical evidence just as a defendant can be ordered to stand up even though he is not going to take the stand, he can be ordered by the court.

(Trial Tr. at 506-07.)  The court acknowledged "that line of authority," but ruled:

> [I]n this particular case as sensitive as this is here and the incriminatory nature of what you would be asking [them] to do, I am not going to force them to put on these clothes unless the government accedes to it.

(Trial Tr. at 507.)  Neither witness appeared in the second trial.  The jury found Montgomery guilty of the cocaine possession and the court sentenced him to seventy-eight months imprisonment.  This appeal follows.

## II.

### A.    Fifth Amendment Privilege

The Fifth Amendment "protects a person only against being incriminated by his own compelled, testimonial communications,"

---

[3]The Barnes brothers were called by the defense to testify in the first trial, but after answering a few preliminary questions, they both pleaded the Fifth Amendment on the advice of appointed counsel.  At the second trial, they again conferred with a public defender, who informed the court of their intention to invoke their privilege.  Thus, the district court appropriately did not permit Montgomery to call them as witnesses.

3

<u>Fisher v. United States</u>, 425 U.S. 391, 409 (1976). It does not offer protection from the compelled production of physical evidence such as fingerprints, photographs, measurements, writing or speaking for identification, appearing in court, standing, walking, or making a particular gesture. <u>Schmerber v. California</u>, 384 U.S. 757, 764 (1966). As the Supreme Court explained:

> The prohibition of compelling a man in a criminal court to be a witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material.

<u>Holt v. United States</u>, 218 U.S. 245, 252-53 (1910). The Fifth Amendment does not protect a person from having to try on clothing. <u>See</u> <u>id.</u> (evidence that a blouse fit a prisoner admissible despite compulsion exerted upon him to try it on); <u>see also</u> <u>United States v. Bullard</u>, 37 F.3d 765, 768-69 (1st Cir. 1994) (because there is no Fifth Amendment right to refuse to "don a hat," it is permissible to draw inference of guilt from refusal to cooperate), <u>cert. denied</u>, 115 S. Ct. 1809 (1995).

The district court abused its discretion in failing to follow this long line of settled authority. The government argued that the evidence was "highly prejudicial" and would present collateral issues that would be "confusing and invite speculation." (Trial Tr. at 533-34). The fact that having the witnesses try on the shirts might be "incriminating," as the district court agreed, does not bring the requested evidence within the ambit of Fifth Amendment protection. The evidence was material and relevant. As part of his defense to the possession charge, Montgomery denied ownership of the shirts and claimed that he did not know how the cocaine ended up in his luggage. As a plausible explanation, the defense suggested that Sir Lancelot Barnes--the only other person known to have access to the sleeper car--put it in Montgomery's bag. In response to Montgomery's defense, the government had him

4

try on the shirts, implying that they were his.  To rebut this implication, Montgomery attempted to have both Sir Lancelot Barnes and his brother Johnnie try on the same two shirts.  The government put the ownership of the clothing squarely at issue, and the court should have permitted Montgomery to defend himself against the allegation of ownership.

The government raises two additional arguments against compelling the witnesses to try on the clothes, both of which we can reject in relatively short order.  First, the government claims that Montgomery's true objective was to force the witnesses to assert their Fifth Amendment privilege against self-incrimination in front of the jury.  While it is true that a defendant cannot call a witness to the stand simply to force invocation of the right against self-incrimination, United States v. Doddington, 822 F.2d 818, 822 (8th Cir. 1987), Montgomery made no attempt to have the witnesses testify.  In fact, when the district court expressed concern for how the witnesses would be identified without their testimony, defense counsel suggested that either Montgomery or one of the sworn officers could identify the witnesses for the jury.  The demonstration could have occurred without any testimony on the part of the witnesses and thus, should have been permitted.  Second, the government contends that having the witnesses try on the shirts would have denied them of the opportunity to cross examine them.  This argument again fails to recognize the difference between testimonial and physical evidence.  The government only has the right to cross-examine witnesses on the testimony that they offer at trial. Further, any negative inference that the jury may draw from the witnesses' failure to testify at trial was cured by the district court's appropriate instruction.[4]

_____

[4]The district court instructed the jury that it should not infer anything as to either party from the fact that neither of the two witnesses testified.  (Trial Tr. at 536-37.)

5

B.    Harmless Error

        The government does not raise harmless error in its appellate brief, thus waiving the argument on appeal.  We have discretion to overlook the waiver, however, after taking into consideration the length and complexity of the record, the certainty of the harmlessness finding, and whether a reversal would result in protracted, costly, and futile proceedings in district court.  Lufkins v. Leapley, 965 F.2d 1477, 1481 (8th Cir.) (citing United States v. Giovannetti, 928 F.2d 225, 226-27 (7th Cir. 1991)), cert. denied, 506 U.S. 895 (1992).  If we elect to review the record sua sponte, our review will err on the side of the criminal defendant. Id.

        Even overlooking the government's waiver in this case, we have carefully reviewed the entire record and cannot say that the district court's error was harmless.  Although the evidence that the cocaine was in Montgomery's luggage was uncontradicted, proof of whether Montgomery knew about the cocaine before it was seized was circumstantial and close, at best.  The first jury was not unanimously persuaded.  The record from the second trial indicates that the shirts did not actually fit Montgomery well.  If the court had required the witnesses to try on the two shirts, the jury would have been able to compare how the shirts fit each witness.  If they fit the witnesses as well or better than they fit Montgomery, the evidence would have corroborated Montgomery's testimony that the shirts did not belong to him or at least would have countered the government's evidence that the shirts fit Montgomery.  Thus, we are not persuaded that the additional evidence in Montgomery's favor would not have changed the jury's decision.

                                    III.

        The district court should have permitted Montgomery to have the witnesses try on the shirts.  Because we cannot say the error

was harmless, we reverse Montgomery's conviction for cocaine possession and remand this case to the district court for a new trial.

BEAM, Circuit Judge, dissenting.

The court takes over the conduct of this criminal trial and permits a validly convicted drug smuggler to walk away, untouched by the jury verdict. From this result, I dissent.

The court overlooks or misconstrues important facts on its journey toward applying immaterial legal precedent or failing to apply relevant procedural and evidentiary rules.

Montgomery was a California state corrections officer and a close friend of Johnnie Barnes, a long-time acquaintance he had only recently bailed out of jail. Montgomery was out of money and, with two remaining weeks of vacation time and three dollars in his pocket, he claims to have agreed to accompany Johnnie, at Johnnie's expense, to a Barnes family reunion in Memphis, Tennessee. At the last minute, and without warning to Montgomery, Johnnie purportedly substituted his brother Sir Lancelot Barnes as Montgomery's traveling companion.

The one-way travel reservations on the train were acquired in Johnnie's name on the date of departure and were routed from Los Angeles through Chicago in such a way that the travelers could maintain their sleeper car during the entire trip. There was no specific showing by Montgomery as to how he was to return to California from a family reunion at which he would presumably know only one person--Sir Lancelot Barnes--although he testified that he thought someone in the Barnes family would probably buy him an airline ticket.

The court's opinion otherwise adequately outlines the events leading up to the police contact in Kansas City.  As noted by the court, Montgomery and Sir Lancelot consented to the search that occurred.  Ownership of the bag containing the 996.3 grams of cocaine was admitted by Montgomery.  Prior to the search, he volunteered that the bag contained only stereo equipment.  Instead, it contained personal toiletries, paycheck stubs with Montgomery's name and, of course, the cocaine wrapped inside of two shirts.  While testifying at trial, Montgomery not only claimed that he didn't know about the cocaine but he also denied that the drugs found in his luggage were ever in his luggage.

Curiously, the court contends that "[t]he government put the ownership of the clothing [shirts] squarely at issue," <u>supra</u> at 5, presumably by requiring Montgomery to try on the shirts in the presence of the jury.  This is clearly incorrect.  Montgomery placed the shirt ownership in issue when he earlier testified  that he did not own the shirts and that he did not know how they ended up in his luggage.  Thus, the Montgomery shirt episode was in direct response to Montgomery's under-oath testimony, after he had affirmatively waived his Fifth Amendment rights.

The court cites four Fifth Amendment cases for the proposition that "physical evidence" may be compelled in spite of constitutional prohibitions.  In a proper case, this is beyond dispute but it is irrelevant to the issues presented in this appeal.  None of the cases are factually apposite.  There is no third-party compulsion involved in any of them.  Each case deals with the Fifth Amendment rights of a criminal defendant on trial or the target of a specific criminal investigation.  Also, whether or not the Barnes brothers could have been compelled to put on the shirts without violation of <u>their</u> Fifth Amendment rights does not reach the question of the fairness of that happening in the presence of the jury during this trial.  Thus, the issue here is not the Fifth Amendment at all.  The issue concerns Federal Rules

8

of Evidence 401, 402 and 403 and the discretionary power of the trial judge to control the admissibility of evidence at trial.

Montgomery clearly wanted to present the Barnes brothers to the jury and have them assert Fifth Amendment objections. This was an impermissible maneuver. United States v. Doddington, 822 F.2d 818, 822 (8th Cir. 1987). To parade them before the jury as living, but not speaking exhibits, identified foundationally by Montgomery as suggested by the court, would barely attenuate the impermissible Fifth Amendment message. Further, the proffer did not involve "physical evidence such as fingerprints, photographs, measurements, writing or speaking for identification," supra at 4 (emphasis added), it required physical acts of trying on clothing to imply ownership of two shirts by Sir Lancelot or Johnnie Barnes which shirt ownership would, in turn, purportedly be an inference of ownership of the cocaine found wrapped in the shirts in Montgomery's bag which cocaine ownership would, in turn, prove that Montgomery did not possess the drugs found in his luggage. This four-tiered approach was required, according to the court, to offset the government's straight forward use of the shirts in direct rebuttal of Montgomery's testimonial claim that he did not own the garments that were found in a bag he claimed to own. At best for Montgomery, these leaping inferences and implications were barely relevant.

The Supreme Court has said time and again that there is no constitutional entitlement to present all relevant facts. Just last term the Court reiterated that "the proposition that the Due Process Clause guarantees the right to introduce all relevant evidence is simply indefensible." Montana v. Egelhoff, 116 S. Ct. 2013, 2017 (1996). So, even if forcing the Barneses to try on the shirts is not precluded by the Fifth Amendment, and the evidence is deemed to be at least marginally relevant, the trial court's decision to exclude evidence under Federal Rule of Evidence 403 must be evaluated under the very deferential abuse of discretion

standard.  <u>United States v. Williams</u>, 95 F.3d 723, 729 (8th Cir. 1996).

The government correctly argued at trial that this evidence is a classic example of information prohibited by Rule 403.  The marginal relevance of the proffered evidence was clearly outweighed by the prejudice and potential prejudice to the government.  First, as earlier indicated, this would have been a thinly veiled dramatization of the Fifth Amendment stance of the Barneses.  Second, since testimonial evidence from either witness was precluded by their invocation of the Fifth Amendment, there was no way to examine the accuracy of the implications advanced by the proffered acts.  For instance, Montgomery was arrested on October 27, 1994, and the proffer was made early June of 1995.  Thus, whether either Johnnie or Sir Lancelot had undergone weight loss or weight gain or could otherwise shed light on the ownership of the shirts was beyond inquiry by the government.  On the other hand, Montgomery was free to take the stand and discuss any matters concerning his fit of the shirts that he felt might be helpful to him.

At issue was not a question of blood type, fingerprints, voice, height, stride or similar characteristics that were reasonably immutable and would run to identification.  Montgomery was not limited in his quest to disclaim ownership by Fifth Amendment protections he had already waived.  In essence, the court now allows him to use Fifth Amendment jurisprudence as both a sword through an inference of ownership by the Barneses and a shield to escape testimonial rebuttal from the Barnes brothers.  In short, the trial court was correct in its evidentiary ruling and this court is wrong to find otherwise.  There was no abuse of discretion.

Finally, under the facts adduced in support of Montgomery's guilt, evidentiary error, if any, was clearly harmless beyond a

10

reasonable doubt.  Even if Johnnie or Sir Lancelot owned the shirts, such fact should not allow Montgomery to escape the consequences of having 996.3 grams of cocaine in his possession in his toiletries bag, whomever may have actually owned the cocaine.  Accordingly, I would affirm.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

11