Dennis R. FATHKE, Appellant,

v.

STATE of Alaska, Appellee.

No. A–6350.

Court of Appeals of Alaska.

Jan. 23, 1998.

Paul E. Malin, Assistant Public Defender, Barbara K. Brink, Acting Public Defender, Anchorage, for Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, C.J., and MANNHEIMER, J., and JOANNIDES, District Court Judge.*

*OPINION*

JOANNIDES, District Court Judge.

Dennis R. Fathke was convicted of first-degree robbery, AS 11.41.500, for robbing a

Subway sandwich shop of approximately eighty dollars and a meatball sandwich. Prior to trial, Fathke moved to compel the production of the palm print of the employee who handed the money and the sandwich bag to the robber. The trial judge denied the motion. Fathke now appeals, contending that the trial judge erred in denying his motion.

FACTS AND PROCEEDINGS

A Subway sandwich shop on Northern Lights Avenue was robbed at gunpoint on the night of January 28, 1995. A man entered the store and ordered a meatball sandwich. Amy Hanson, the crew leader at the Subway shop that night, made the sandwich, put it in a plastic bag, and rang up the purchase on the cash register. When she turned back toward the counter, the man showed her the butt of a gun sticking out of his pocket and demanded that Hanson open the cash register. Hanson did as she was told, and gave the robber the money that was in the register. The robber then left with both his freshly-ordered meatball sandwich and the money from the register, which added up to just under eighty dollars.

Hanson called 911 and described the man who had robbed the store. Anchorage Police Officer Anthony Henry was sent to the shop. Near the scene of the crime, Henry saw a man who partially matched Hanson's description of the robber. The man identified himself as Dennis Fathke; Henry conducted a pat-down search of Fathke and found a .22 caliber starter pistol in Fathke's left jacket pocket; he found no money on Fathke, except for some loose change.

Another officer took Hanson to the alley where Officer Henry was holding Fathke, and Hanson was asked if she recognized Fathke. Hanson identified Fathke as the man who had robbed the Subway store earlier that night.

The police later found the meatball sandwich in its bag near the scene of the robbery. The police lifted a partial palm print from the sandwich bag. It did not match Fathke's palm print. The police were unable to rule

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

out the possibility that the palm print belonged to Hanson as they did not take Hanson's palm print.

Fathke was indicted for first-degree robbery. Prior to trial, Fathke asked the state to obtain Hanson's palm prints and to compare them to the palm print on the plastic bag. The state did not respond to Fathke's request. As a result, Fathke filed a pretrial motion to compel Hanson to produce palm and fingerprints for comparison with the print found on the sandwich bag. Fathke argued that Hanson's print was potentially exculpatory because if the palm print—already established as not being his—was not Hanson's print either, a logical inference would be that the print belonged to an unknown third person—*i.e.*, the actual robber. The trial judge denied Fathke's motion without comment. A jury later convicted Fathke.

Fathke appeals, claiming that Hanson's prints were relevant trial evidence, and that the trial judge's refusal to compel Hanson to produce these prints was reversible error because it denied him the opportunity to present potentially exculpatory evidence at trial. The state raises three alternative arguments in response to this claim: (1) that the trial court had no authority to compel Hanson to submit to fingerprinting; (2) that even if it had this authority, its failure to exercise it did not constitute an abuse of discretion; and (3) even if the court did abuse its discretion, any error was harmless.

## DISCUSSION

*The trial court had the authority to issue a subpoena compelling Hanson to produce palm and fingerprints.*

■ Alaska Criminal Rule 17(c) provides: A subpoena may ... command the person to whom it is directed to produce the books, papers, documents or other objects designated therein. The court on motion made promptly may suppress or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time they are to be offered in evidence and may, upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys.

■ The state asserts that Criminal Rule 17 authorizes a trial court to issue subpoenas only to compel a person's appearance or to produce documents or other objects in court but that nothing in the rule suggests that the court has the authority to issue a subpoena requiring a person to allow the taking of her fingerprints. This argument seems based on the notion that a subpoena requiring the production of fingerprints impermissibly compels the creation of evidence, rather than merely compelling the production of an object. This distinction is unpersuasive. Hanson's palm and fingerprints can easily be viewed as objects in her possession; submitting to fingerprinting is merely the means by which this object would be made available for inspection, much as photocopying might be the means by which a document could be made available.

■ A citizen's duty to cooperate in judicial proceedings includes not only the duty to comply with a subpoena to testify or to provide objects in one's control, but also the duty to provide certain forms of nontestimonial physical evidence, such as "submit[ting] to 'fingerprinting, photographing, or measurements, ... writ[ing] or speak[ing] for identification, ... appear[ing] in court, ... stand[ing], ... assum[ing] a stance, ... walk[ing], or ... mak[ing] a particular gesture.'" *United States v. Euge*, 444 U.S. 707, 713, 100 S.Ct. 874, 879, 63 L.Ed.2d 141 (1980) (quoting *Schmerber v. California*, 384 U.S. 757, 764, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908 (1966)).

A similar issue arose in a recent Eighth Circuit case, *United States v. Montgomery*, 100 F.3d 1404 (8th Cir.1996). Montgomery was charged with possession of cocaine found in the pocket of a shirt in his luggage. *Id.* at 1405. The state had Montgomery try on the shirt. Montgomery requested that two other men with access to the luggage also try on the shirt (the two men had invoked their Fifth Amendment privilege when called to

testify); the trial court refused. *Id.* at 1406. The Eighth Circuit Court of Appeals reversed Montgomery's conviction, holding that the Fifth Amendment did not prevent compelling the two witnesses from trying on the shirts in front of the jury, and that "[t]he district court abused its discretion in failing to follow this long line of settled authority"[1] where, as here, the evidence was "material and relevant." *Id.*

■ The state contends that the "nonconsensual fingerprinting of a person is subject to the probable cause constraints of the Fourth Amendment," and would therefore require a showing of probable cause which cannot be shown here. The state is correct that nonconsensual fingerprinting can constitute a search and seizure within the meaning of the Fourth Amendment. *See Hayes v. Florida*, 470 U.S. 811, 813–14, 105 S.Ct. 1643, 1645–46, 84 L.Ed.2d 705 (1985). However, the Fourth Amendment does not place the same limitations on the production of evidence under subpoena as it places on police investigations; normally, no probable cause determination is necessary when the court subpoenas evidence. *See Dept. of Revenue v. Oliver*, 636 P.2d 1156, 1165 and n. 19 (Alaska 1981); *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 195, 208–09, 66 S.Ct. 494, 505–06, 90 L.Ed. 614 (1946).

■ Additionally, the Alaska Criminal Rules belie the state's argument that forcing a witness to be fingerprinted is an invasion of privacy; the rules specifically authorize a court to order persons to participate in certain non-testimonial identification procedures, such as fingerprinting. *See* Alaska R.Crim. P. 16(c)(2)(iii).

In sum, we find that the trial court had, but failed to exercise, the authority to compel Hanson to produce palm and fingerprints. We now turn to whether this was an abuse of discretion.

*The refusal to compel the production of Hanson's prints was an abuse of discretion.*

■ Alaska Criminal Rule 17(c) authorizes a court to refuse to issue a subpoena, or to limit the scope of a requested subpoena, "if compliance would be unreasonable or oppressive." Alaska R.Crim. P. 17(c). On appeal, the state makes three arguments why the trial judge's refusal to order the taking of Hanson's prints was not an abuse of discretion: (1) Even without Hanson's print, Fathke could argue the police investigation was flawed for failing to print Hanson, thus leaving open the possibility that the print belonged to a third person; (2) even if the print on the bag was not Hanson's, Fathke's argument is flawed because some innocent third person could have touched the bag; and (3) forcing Hanson to be palm and fingerprinted would have been unwarranted intrusion into her privacy. These arguments are unconvincing.

The state's first argument is flawed because Fathke wanted to show that the print actually belonged to a third person, not just that the police investigation was flawed. Without proof that another person's print was on the bag, Fathke's argument that some unknown person touched the bag would be wholly speculative; conversely, actual evidence that a third person had indeed touched the bag would have given him an evidentiary basis for making this argument before the jury. While it is true that Fathke might have touched the bag but left no print, Fathke was not trying to secure evidence capable of eliminating any possibility that he had touched the bag; instead, he was merely seeking evidence establishing the fact that some third person had touched it.

While it is true that another store employee or a patron may have innocently touched the bag, this possibility appeared remote under the facts[2] and does not eliminate the

---

1. The line of cases referred to as authority include *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); and *Holt v. United States*, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910).

2. Hanson testified that Subway's plastic bags come stapled onto a cardboard base in stacks of approximately fifty to a hundred, that these stacks are situated near the cash register at the end of the production line, that the bags would not be handled around the food preparation area

evidentiary value of a third person's palm print. A third person's palm print would make it less probable that Fathke was the robber. Therefore Fathke would have been unable to make this argument as effectively without this print.

The state further argues that a subpoena requiring Hanson, a witness, to provide her prints would have involved a very significant intrusion into her privacy. We believe however that if the court had established appropriate safeguards in the use and dissemination of Hanson's prints, the intrusion on her privacy would have been negligible when compared to society's interest in the judicial process. "Fingerprinting involves none of the probing into an individual's private life and thoughts that marks an interrogation or search." *Davis v. Mississippi*, 394 U.S. 721, 727, 89 S.Ct. 1394, 1397, 22 L.Ed.2d 676 (1969). With appropriate safeguards in place, the intrusion into Hanson's privacy would have been minimal compared to the benefits of obtaining her palm and fingerprints.

Based on the above factors, we find that the trial judge's denial of Fathke's motion to compel prints was an abuse of discretion. The prints were relevant and potentially exculpatory. Securing these prints would not have been unduly oppressive or unreasonably intrusive.

### The error in denying Fathke's motion to compel production of Hanson's prints was not clearly harmless error.

 Because the trial judge's error in denying Fathke the opportunity to secure Hanson's prints implicated his constitutional right to compulsory process, we next examine whether it can safely be said that this error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

The state's evidence against Fathke was strong. Hanson was within only a few feet of the robber, in a well-lit store interior. Within minutes of the crime, Hanson was taken to the alley where the police had detained Fathke. Fathke's facial features were the same as the robber's, and—but for the fact that Fathke was wearing a cap and was no longer wearing a hood, "[h]e was wearing the same clothes.... He had the same coat on with the checkered pattern, the same blue pants on." The jacket was apparently one that was quite unique: it had a distinctive logo on its back, a checkered collar, and a discolored area on the shoulder. Hanson testified at trial that the jacket taken from Fathke and made a trial exhibit was the

---

at all, and that the individual bags pull away quite easily, one at a time.

In contrast to this rather concrete testimony suggesting that it was unlikely the bag had been touched by other employees, the part of Hanson's testimony that does suggest the possibility of other employees touching the bag seems to be based almost entirely on speculation. Hanson testified that "the cookies are right there and the napkins are right there, and people can touch them when they put—they're reaching for cookies, people can touch them when they're reaching for napkins." "People can just walk by and lean against the counter and touch them." Even then, however, Hanson had to concede that such people would likely touch only the top bag, or "[m]aybe the bag underneath when they're ripping the top one away." This testimony suggests that bags touched by wayward palm prints would likely be used and gone within one or two sandwiches of being touched. Hanson also testified that, while it was unlikely that someone had taken the entire stack of bags out of the dispenser box and touched them, "you just reach in and grab it, and your hand can get on any one."

Charles J. McMichael, another Subway crew leader, also testified. His testimony did suggest a greater possibility of wayward prints on bags than Hanson's did. He suggested that because the bags are inventoried on a weekly basis, which involves their being counted by hand individually, and because the reams of bags have to be transferred from the box to the countertop, it is possible that an employee might touch the bags, even those within a stack. He also testified that "the bags intend [sic] to get messed up, so all of them—we'll go through and we'll straighten them out. That way they look nice on the line."

McMichael also testified, however, that this straightening out would be done with fingers, not with the palm of one's hand, and that while other employees might possibly conduct inventories differently, he himself would feather through the bags with his fingertips, "like you would with papers." He went on to agree with the assertion that, when one person is both making the sandwich and running the cash register, as Hanson did on the night of the robbery, "in all likelihood, if we're going to find a print on the bags not made by a customer, that it would be—that we'd be looking at that one person[.]"

same jacket worn by the robber in all these regards. While the police could not "make a positive match," Fathke's shoes nonetheless were of "the same length, the same width, the same sole pattern, and the same fairly unique feature of wear pattern" as footprints found outside the scene of the crime.

However, there were some missing pieces, uncertainties, and contradictions in the state's case against Fathke. To begin with, the stolen money was never found. Also, while the store's video camera captured footage which, when enhanced, showed that the robber's dark jacket had some sort of lighter emblem or image on its back, much as Fathke's jacket did, the police "couldn't make a ... positive ID," and "couldn't say it was absolutely—absolutely the jacket[.]" Nor could the police make a positive identification of the footprints they found near the scene of the crime. Officer Henry testified that, "it was obvious to me that [Fathke] had been drinking," and that, "I could smell it on him outside in the open air"; Hanson, however, testified that the robber did not smell of alcohol when in the store.

The state's strongest evidence against Fathke seems to be Hanson's positive identification of Fathke by his clothes. While she told Officer Sims that she was "100 percent sure on the clothes," however, Hanson also testified that "it was hard to tell" whether Fathke was the robber from his facial features alone, since the robber had worn a hood in the store and Fathke's "hair was all in the hood before." Furthermore, Hanson, who understood the difference between an automatic and a revolver, identified the robber's gun as an automatic; Fathke, however,

was found with a revolver. Hanson initially said the robber wore a gray jacket; later she said it was dark blue, then black. Hanson never mentioned the discoloration on the jacket when she called 911, despite the fact that this was one of the most distinguishing features of the jacket. At trial, she initially testified that she was only 85 percent certain that the defendant was the robber, but on the following day she testified that she was 100 percent certain; when asked whether her certainty had increased overnight, she said, "Yes, it has. I've been thinking about it all night. I've been remembering everything."

Under these circumstances, we cannot be sure that evidence of a third person's print on the sandwich bag would not have altered the jury's decision. We therefore REMAND this case to the superior court so that Hanson's prints may be taken. Based upon the results of the print comparison, the superior court should determine whether the print evidence could have appreciably affected the jury's verdict, thereby necessitating a new trial.

The superior court is hereby ordered to enter findings of fact and conclusions of law based upon the new evidence. The findings and conclusions should be transmitted to this court within 90 days of this order.

We retain jurisdiction of this appeal.