NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

ANTHONY W. STIFFARM JR.,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-11198
Trial Court No. 3KN-09-1509 CR

O P I N I O N

No. 2437 — November 28, 2014

Appeal from the Superior Court, Third Judicial District, Kenai, Carl Bauman, Judge.

Appearances: Andrew Steiner, Bend, Oregon, for the Appellant. Diane L. Wendlandt, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Hanley, District Court Judge.[*]

Judge ALLARD.

---

[*]  Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

Following a jury trial, Anthony W. Stiffarm Jr., a prisoner at Wildwood Correctional Center, was convicted of three counts of second-degree sexual assault for sexually assaulting a woman in the prison stairwell. The sole issue at trial was identity — whether the assaults were committed by Stiffarm or by someone else.

Stiffarm raises three main claims on appeal, all of which relate to the victim's identification of Stiffarm as her assailant. First, Stiffarm argues that the victim's identification of him based on a single photograph shown to her by corrections officers shortly after the assault should have been excluded as unreliable because it was the product of an "unnecessarily suggestive" identification procedure. Second, he argues that the court erred by instructing the jury at the State's request that this single-photo identification procedure was "legal and lawful." Third, he argues that the court violated his constitutional rights and his right to discovery under Alaska Criminal Rule 16 by refusing to compel the Department of Corrections to produce information about other inmates housed in the prison at the time of the sexual assaults, including booking photos, so that he could use that information to challenge the reliability and accuracy of the victim's identification of him.

We conclude that additional proceedings are required to determine whether Stiffarm was entitled to the discovery he requested from the Department of Corrections and, if so, whether the court's refusal to compel that discovery prejudiced Stiffarm's case. Because the superior court's resolution of these issues may entitle Stiffarm to a new trial, we conclude that it is premature to address Stiffarm's other claims of error.

*Factual and procedural background*

K.B. worked as a tutor in Building Ten of the Wildwood Correctional Center, a medium and minimum security facility in Kenai. At approximately 8:50 a.m. on July 22, 2009, shortly after K.B. arrived at work, an inmate assaulted her on a

stairwell landing between the second and third floors in Building Ten. The inmate placed his hand on her genital area and squeezed her breast underneath her bra.

After assaulting K.B., the inmate climbed up the stairs to the third floor, brushing by two other inmates who were descending the stairs to the second floor. These other inmates discovered K.B. on the landing, visibly shaken and in a state of shock. Neither of the two inmates knew the name of the inmate who had brushed by them on the stairs.

K.B. went to the shift supervisor's office to report the assault. She was crying and upset. When asked to describe her assailant, she described him simply as a "round-faced native." While in the shift supervisor's office, K.B. looked at a wall display of the booking photographs of all 500 inmates in Wildwood, including the 256 inmates in Building Ten where the assault took place. K.B. was unable to focus and unable to identify anyone.

After a few minutes, K.B. was moved to a break room. Because some of the corrections officers suspected that Stiffarm might be the assailant, primarily because of his prior criminal history and the fact that he fit the general description of a "round-faced native," Stiffarm's booking photograph was taken off the wall display and shown individually to K.B. to see if she could identify him as the man who assaulted her. K.B. immediately identified the 1" x 1" booking photograph of Stiffarm as depicting her assailant. K.B. was not shown photographs of any other inmates.

The prison staff then reviewed a surveillance video that covered part of the third-floor hallway and part of the doorway leading to the stairwell. (At the time of the assault, there were no surveillance videos in the stairway itself.) This video showed various inmates walking through the hallway. At about 8:48:48 a.m., Stiffarm appears to enter the third-floor stairwell. A little over a minute later, at 8:50:03 a.m., the two other inmates enter the stairwell. Twenty-three seconds later, at 8:50:23 a.m., Stiffarm

appears to exit the third-floor stairwell, walk down the hallway, and enter his room. Twenty-six seconds later, at 8:50:59 a.m., one of the other two inmates exits the stairwell, walks down the hall, and reports the assault to a corrections officer. At 8:51:41 a.m., the corrections officer can be seen running toward the stairwell entrance.

*The discovery dispute*

Early in the pretrial litigation of this case, Stiffarm filed a motion under Alaska Criminal Rule 16 asking the trial court to compel the Department of Corrections to disclose "a list of inmates at Wildwood Correctional Center, Building 10 ... with corresponding booking photos and biographical data including ethnicity, height, weight, eye, and hair color." Stiffarm argued that he needed this information to properly evaluate the procedures used to identify him as K.B.'s assailant, and to challenge the accuracy and reliability of K.B.'s identification.

The Department of Corrections opposed Stiffarm's discovery request, claiming that the request was unduly burdensome and that compiling this information would take thirteen hours of labor. The Department also asserted, without any citation to authority, that booking photographs are "generally confidential and not subject to general release."

The district attorney's office also opposed the discovery request, but on a different ground. The prosecutor argued that the surveillance video was dispositive of the issue of the assailant's identity, and that Stiffarm's discovery request, which was based on the need to challenge the victim's identification, was therefore "unnecessary."

The superior court denied Stiffarm's discovery motion, finding that the discovery request was a "fishing expedition" and was overly broad and unduly intrusive.

Stiffarm later renewed his discovery motion on the eve of trial, arguing that he was unable to properly defend against K.B.'s identification of him without this

information. The court initially proposed a compromise solution, giving the defense the option of requesting production of a limited number of the booking photographs (a remedy Stiffarm argued was inadequate). But the court ultimately abandoned even this limited option as "too difficult" given the nearness of the trial, and the court instead denied Stiffarm's renewed motion as untimely.

*Stiffarm's motion to suppress K.B.'s identification*

Prior to trial, Stiffarm also moved to exclude the evidence of K.B.'s out-of-court identification of him on the ground that the single-photo procedure the Department of Corrections used was unnecessarily suggestive and resulted in an unreliable identification.

Following an evidentiary hearing, the superior court agreed that the single-photo identification procedure used by the corrections officers was unnecessarily suggestive. The court found that the corrections officers had used the type of flawed identification procedure that could lead to an unreliable identification and taint the victim's memory, such that future identifications would also be unreliable.[1]

After ruling that the identification procedure was unnecessarily suggestive, the trial judge applied the factors the United States Supreme Court articulated in *Neil v. Biggers*[2] and *Manson v. Brathwaite*[3] to determine whether the victim's identification was nevertheless sufficiently reliable under the totality of the circumstances to be admissible. The trial judge concluded that, given K.B.'s opportunity to view her assailant and the immediacy of her identification, the *Biggers/Brathwaite* factors — combined with the

---

[1] *See, e.g.*, *Tegoseak v. State*, 221 P.3d 345, 350-53 (Alaska App. 2009).

[2] 409 U.S. 188, 199-200 (1972).

[3] 432 U.S. 98, 99 (1977).

independent corroborating evidence provided by the surveillance video — weighed in favor of admitting the identification.

*The trial and the jury's verdict*

At trial, Stiffarm did not contest the allegation that K.B. had been sexually assaulted. The sole question for the jury was whether the State had proved Stiffarm's identity as K.B.'s assailant beyond a reasonable doubt.

To prove its case, the State relied primarily on the surveillance video, K.B.'s identification of Stiffarm, and the identifications of the other two inmates who had been in the stairwell.

In response, the defense argued that the surveillance video was not dispositive of Stiffarm's identity as the assailant because the time-lapse video captured only part of the stairwell entry and only fragments of time. The defense asserted that the real assailant entered and exited the stairwell without being captured on the video. The defense also argued that K.B.'s identification was unreliable because it was the product of an overly suggestive identification procedure that had irreparably tainted her memory of the assailant. Lastly, the defense argued that the identifications by the two inmates were inherently unreliable because the identifications were made after correctional staff had already concluded Stiffarm was the assailant.

After requesting playbacks of K.B.'s testimony and the surveillance video, the jury found Stiffarm guilty of the three counts of second-degree sexual assault.

This appeal followed.

*Why we conclude that the trial court must reconsider whether Stiffarm was*
*entitled to the discovery he requested from the Department of Corrections*

As noted above, Stiffarm asked the superior court to compel the Department of Corrections to provide him with booking photographs and other discovery concerning inmates housed in Building Ten at the time of the sexual assaults.

In a ruling that the State now concedes is "puzzling," the superior court denied Stiffarm's discovery motion for three reasons:

First, the superior court concluded that Stiffarm was not entitled to the discovery or production of information to attack the credibility of K.B.'s identification because the court had already ruled that, despite the unnecessarily suggestive nature of the single-photo procedure, K.B.'s identification was nonetheless reliable under the *Biggers/Brathwaite* totality of the circumstances test.

This rationale was faulty. The superior court's *Biggers/Brathwaite* ruling meant only that (in the court's view) the identification was sufficiently reliable to qualify for admission into evidence under the due process clause.[4] The court's ruling did not mean that Stiffarm was prohibited at trial from attacking the reliability of the identification and the method through which it was obtained. Likewise, the superior court's *Biggers/Brathwaite* ruling did not authorize the court to impede Stiffarm's investigation into the reasons for doubting the accuracy of the identification, nor did it authorize the court to deny Stiffarm the benefits of legal processes for compelling discovery relevant to this issue.

The superior court's second stated reason for denying Stiffarm's request for production was that, because the State had already furnished Stiffarm's attorney with the surveillance video of the stairwell entrance, and this evidence appeared to be "dispositive" on the issue of identity, Stiffarm's motion "appear[ed] to be a fishing

---

4    *See Brathwaite*, 432 U.S. at 113-14.

expedition" — an unnecessary and pointless exercise with little prospect of turning up relevant evidence.

But if, as the State claimed and the superior court found, the surveillance video was "dispositive" of the question of the attacker's identity, then there would have been no need for the State to introduce K.B.'s photographic identification at trial. And yet the prosecutor fought to introduce K.B.'s identification over Stiffarm's objection. This litigation strategy strongly suggests that the prosecutor did not perceive the video as dispositive of the attacker's identity.

The superior court permitted the State to introduce K.B.'s pre-trial identification of Stiffarm, despite the court's finding that the single-photo identification procedure was unnecessarily suggestive and the type of procedure that could lead to an unreliable and inaccurate identification. Having made that ruling, the superior court was duty bound to ensure that Stiffarm had a full and fair opportunity to challenge the reliability and accuracy of the identification — including appropriate pre-trial access to the discovery Stiffarm needed to litigate this issue.

The superior court's third reason for denying Stiffarm's motion was that production of the inmate photographs would intrude upon "the confidentiality and privacy of the other inmates" and would entail undue "time and cost" for the Department of Corrections.

This third rationale for denying Stiffarm's motion is also flawed. Under *Braham v. State*,[5] even if the Department of Corrections had convincingly demonstrated that disclosure of this information to the defense would endanger persons or undermine the enforcement of the laws, or jeopardize some other important state interest, that would not automatically entitle the Department to withhold the information. Once the

___

[5]    571 P.2d 631 (Alaska 1977).

Department made this showing, the information would still be subject to *in camera* review by the court to establish its relevance to the defense case.[6]

Here, the superior court simply accepted, at face value, the Department of Corrections's unsupported assertions that the requested information was "confidential" and that it would be "overly burdensome" to produce the photographs from Department of Corrections records.

When a litigant asks a court to order a third party (here, the Department of Corrections) to compile and produce documents, records, or other evidence that would be discoverable if in the possession or control of the prosecuting attorney, the court is authorized to consider the burden the discovery request would place on the third party.[7] But these burdens are clearly secondary to a defendant's due process right to a fair opportunity to investigate the government's case and to meet the government's evidence.[8] The superior court was therefore not entitled to summarily deny discovery of relevant information based on the Department of Corrections's unsupported assertions that the information was confidential and the request unduly burdensome.

The superior court was free to explore less burdensome options for the production of the information Stiffarm was requesting.[9] Indeed, the court started to explore one alternative: allowing the defense attorney to select the dozen inmate booking photographs that the attorney believed were most probative of the suggestive nature of the single-photo identification procedure. But the court abandoned this option

---

[6] *Id.* at 643.

[7] *See* Alaska R. Crim. P. 17(c).

[8] *See Braham*, 571 P.2d at 643-44.

[9] *See Fathke v. State*, 951 P.2d 1226, 1230 (Alaska App. 1998) (noting that a court may establish "appropriate safeguards in the use and dissemination" of discoverable materials).

because the court concluded that it was simply too late to allow Stiffarm to engage in further discovery. This might have been a proper rationale *if* the court had granted Stiffarm's earlier, timely request for discovery. But the court did not.

Likewise, the superior court was not entitled to deny Stiffarm's request on the ground that the requested materials *might* be confidential — an assertion that the Department of Corrections made but never supported.[10] Even assuming inmate photographs are confidential, the superior court still had a duty to assess whether there was some alternative means to protect the affected inmates' confidentiality while still honoring Stiffarm's right to pretrial discovery — for example, a protective order restricting the defense attorney's use and dissemination of the photographs.

For these reasons, we conclude that the superior court violated Stiffarm's discovery rights under Criminal Rule 16 when the court denied Stiffarm's motion without further evaluation of these issues.

The next question is whether Stiffarm was prejudiced by this violation of Rule 16. Because the superior court failed to conduct any review of the requested discovery materials, whether *in camera* or otherwise, we are left without an adequate record to determine whether Stiffarm was prejudiced by the superior court's ruling — *i.e.*, whether the requested materials would have directly aided Stiffarm's case.

The State argues that any error in refusing to grant Stiffarm his requested discovery was harmless because the surveillance video was "dispositive" of the issue of Stiffarm's identity as K.B.'s assailant. While we agree that the video is strong evidence,

---

[10] *See Johnson v. State*, 889 P.2d 1076, 1081 (Alaska App. 1995) (stating that "Alaska Criminal Rule 16 permits the state to withhold disclosure of records whose contents are potentially discoverable only if a two-step procedure has been met: first, the state must make a threshold showing of good cause to maintain the records' confidentiality; second, if, but only if, such a showing is made, the trial judge must review the records *in camera* and determine that the material therein is not relevant." (citing *Braham*, 571 P.2d at 643)).

we are unable on the current record to determine whether it is as dispositive as the State claims.

Accordingly, we remand the case for further proceedings to establish whether the requested discovery would have aided Stiffarm's case and whether he is entitled to a new trial because of this violation of Criminal Rule 16. Because we are remanding the case for these additional proceedings, we find it unnecessary at this juncture to address the other claims Stiffarm raises in this appeal.

*Conclusion*

We REMAND this case to the superior court for further proceedings consistent with this decision. More specifically:

Within 15 days of our decision, the superior court shall order the Department of Corrections to respond to Stiffarm's discovery request and to produce the requested booking photographs and related information, either to the defendant's attorney or to the court for *in camera* review.

If the superior court determines that *in camera* review of the booking photographs and related information is required to protect an important state interest, and if the court ultimately decides that only a limited amount of this material should be disclosed to the defense, the superior court shall ensure that all of the information it reviewed *in camera* is retained by the court system (under seal, if appropriate), so that the material is available for appellate review, and the superior court shall put its reasons for limiting the disclosure on the record (again, under seal if appropriate).

The superior court shall issue its final decision on these discovery matters within 60 days of our decision.

Once the defendant has received the discovery to which the superior court finds he is entitled, the defendant shall be given an opportunity to litigate whether he was

prejudiced by the failure to receive this discovery prior to trial and whether he is therefore entitled to a new trial.

The superior court shall issue its final decision on the question of a new trial within 120 days of our decision.

If the superior court concludes that a new trial is warranted, the court has the authority to order this new trial, although the superior court must notify us of its decision.

If the superior court concludes that a new trial is not warranted, the court shall put its decision in writing and shall transmit its decision to this Court. We will then allow the parties to file supplemental briefs addressing the superior court's decision. Once we have received the parties' supplemental briefs, we will resume our consideration of this issue and the other points raised in this appeal.