# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 03-1765

_____

United States of America,　　　　　*
　　　　　　　　　　　　　　　　*
　　　　Appellee,　　　　　　　*
　　　　　　　　　　　　　　　　*　Appeals from the United States
　　　　v.　　　　　　　　　　*　District Court for the Western
　　　　　　　　　　　　　　　　*　District of Missouri.
Juan Reyes,　　　　　　　　　*
　　　　　　　　　　　　　　　　*
　　　　Appellant.　　　　　　*

_____

Nos. 03-1939

_____

United States of America,　　　　　*
　　　　　　　　　　　　　　　　*
　　　　Appellee,　　　　　　　*
　　　　　　　　　　　　　　　　*
　　　　v.　　　　　　　　　　*
　　　　　　　　　　　　　　　　*
Samuel M. Burton,　　　　　　*
　　　　　　　　　　　　　　　　*
　　　　Appellant.　　　　　　*

_____

Submitted: November 18, 2003

Filed: March 30, 2004

_____

Before LOKEN, Chief Judge, McMILLIAN, and BEAM, Circuit Judges.

_____

BEAM, Circuit Judge.

Operation Cocaine Cowboys was an undercover investigation into a large drug conspiracy. After hearing evidence arising from that investigation, a jury convicted Samuel Burton and Juan Reyes (the defendants) of several drug-related crimes. This appeal's principal issue involves a co-conspirator's out-of-court statements that implicated the defendants. In essence, both defendants complain that introducing these statements through government agents violated their Confrontation Clause rights because when the defendants tried to call the co-conspirator as a witness, he invoked the Fifth Amendment, and thus the defendants could not question him. Also, Reyes argues that the evidence was insufficient to support his firearm-related conviction because he did not possess a firearm in furtherance of and in relation to a drug trafficking offense. We affirm.[1]

## I. BACKGROUND

Although this case involves a factually complex drug conspiracy, we discuss only the few facts necessary to resolve the issues we address in this opinion. Unless we note otherwise, we recite and evaluate the facts in the light most favorable to the government because it prevailed at trial. United States v. Brown, 346 F.3d 808, 813 (8th Cir. 2003).

An informant approached members of COMET,[2] a Missouri drug task force, and told them of drug activity in a local trailer park. Based on that information, COMET began Operation Cocaine Cowboys, dispatching undercover officers and employing informants to investigate the reported drug activity.

---

[1]The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri.

[2]COMET stands for the Combined Ozark Multi-Jurisdictional Enforcement Team.

After Reyes's name surfaced during the investigation, Sergeant Cooper, working undercover with COMET, used an informant to meet Reyes. Early in the investigation, Cooper told Reyes that Cooper was a drug dealer. After learning that Cooper was a drug dealer, Reyes gave Cooper a gun and asked him to deliver it to Reyes's family in Mexico. Reyes and Cooper disagree about the purpose of that request. Cooper testified that Reyes asked him to deliver the gun to earn Reyes's trust so the two could engage in drug-related transactions later. In other words, Cooper told the jury that the gun request was a test he had to pass before Reyes would do business with him. But Reyes insisted that he only wanted to protect his family in Mexico, and that he did not request delivery to establish trust for future drug business. When Reyes later sold Cooper cocaine, he extended him a form of credit and told Cooper, "I'll trust you."

Burton's name also surfaced during COMET's investigation. Officers and informants engaged in drug transactions with Burton. Burton does not contest the facts surrounding these transactions, but he does contest how the government linked him (and the transactions) to the larger conspiracy.

A grand jury indicted the defendants and many other conspiracy participants. The jury convicted both defendants on multiple counts. Because the jury convicted both defendants of conspiracy, each was held responsible for more than just their individual drug sales.[3] In this appeal, the defendants primarily challenge the manner in which the government introduced (and the district court admitted) evidence linking the defendants to the conspiracy.

To link the defendants to the conspiracy, the government offered statements that Caasimoro Gonzalez made to undercover agents while the conspiracy was

[3]The jury convicted Reyes of a lesser-included conspiracy offense, which did not encompass the conspiracy's entire scope.

ongoing. The grand jury indicted Gonzalez as part of the conspiracy, but he pleaded guilty before the defendants' trial, though he had not been sentenced at the time of their trial. The government introduced Gonzalez's out-of-court statements through agents who testified to what Gonzalez told them about the defendants. The government did not call Gonzalez as a witness. When the defendants did call him as a witness, Gonzalez and his counsel told the trial court that he would invoke the Fifth Amendment as to all questions the defendants wanted to ask. The trial court held a hearing, asked the defendants what questions they planned to ask, and determined that Gonzalez's claim of privilege was valid as to all of those questions. So the trial court did not allow the defendants to call Gonzalez because all he would do was take the stand, invoke the Fifth Amendment, and step down.

At trial, the defendants challenged the district court's decision in two ways. First, they argued that the trial court should allow them to call Gonzalez to the stand to make him assert his privilege in the jury's presence so they could argue inferences from his silence. When the trial court refused this request, they argued that the trial court must strike the statements the government introduced because they were unable to cross-examine Gonzalez about the statements.

## II.   DISCUSSION

Below we address the issues relating to Gonzalez's out-of-court statements and Reyes's firearm-related conviction. We have carefully considered the defendants' additional arguments, and we affirm the district court's decisions on those issues. See 8th Cir. R. 47B.

## A.     Gonzalez's Out-of-Court Statements

Although the defendants couch their arguments in terms of the Confrontation Clause, their reasoning more clearly invokes concerns about their compulsory-process rights (or simple evidentiary error). We first explain why the Confrontation Clause does not apply here. Then, we explain why the trial court's actions were ultimately correct, no matter how the argument is phrased.

Defendants' argument finds no support in the Confrontation Clause. Gonzalez did not testify. The defendants were able to (and did) cross-examine the government agents who recounted Gonzalez's statements. So the only way the defendants can prevail under the Confrontation Clause is if they can show they had a right to cross-examine Gonzalez *due to the agents' testimony recounting his statements*. But no such right existed because Gonzalez's statements were nontestimonial,[4] co-conspirator statements, which fall within a firmly rooted hearsay exception.[5] Bourjaily v. United States, 483 U.S. 171, 183 (1987). When a statement satisfies the requirements for a co-conspirator statement under Federal Rule of Evidence 801, both the Rules of Evidence and the Confrontation Clause allow the government to introduce the statement through a witness who heard the statement, even if the government cannot

---

[4]Burton cites a recent Supreme Court decision to support his Confrontation Clause argument. Crawford v. Washington, No. 02-9410, 2004 WL 413301 (Mar. 8, 2004). Crawford does not support his argument, however, because co-conspirator statements are nontestimonial. Id. at *11. Crawford did not provide additional protection for nontestimonial statements, and indeed, questioned whether the Confrontation Clause protects nontestimonial statements at all. Id. at *14.

[5]Federal Rule of Evidence 801 characterizes out-of-court statements by co-conspirators as exemptions from, rather than exceptions to the hearsay rule. Whether such statements are termed exemptions or exceptions, the same Confrontation Clause principles apply. United States v. Inadi, 475 U.S. 387, 399 n.12 (1986).

show that the co-conspirator is unavailable. United States v. Inadi, 475 U.S. 387, 400 (1986). In short, the Confrontation Clause does not give the defendant the right to cross-examine a person who does not testify at trial and whose statements are introduced under the co-conspirator hearsay exclusion. White v. Illinois, 502 U.S. 346, 356 (1992); cf. United States v. Kehoe, 310 F.3d 579, 590-91 (8th Cir. 2002) (holding that the Confrontation Clause did not guarantee the defendant the right to cross-examine a speaker whose statements were imputed to the defendant as adoptive admissions of a party opponent), cert. denied, 123 S. Ct. 2112 (2003).

Nor did the trial court violate the defendants' compulsory-process rights. The defendants tried to compel Gonzalez to the stand. But he asserted his Fifth Amendment privilege, and the trial court correctly held that he did not have to answer any of the questions the defendants wanted to ask him. Neither defendant contests the validity of Gonzalez's privilege assertion. And wisely, they do not argue that their right to compulsory process trumped Gonzalez's Fifth Amendment right. See Culkin v. Purkett, 45 F.3d 1229, 1233 (8th Cir. 1995); United States v. Robaina, 39 F.3d 858, 862 (8th Cir. 1994). Instead, they argue that the trial court either should have forced him to assert the privilege in the jury's presence, or when it refused to do so, should have stricken all testimony about his out-of-court statements.[6] Both arguments are wrong.

First, this situation differs from the one in which the government seeks to use a privilege invocation against the defendant who invokes the privilege. Gray v. Maryland, 796 A.2d 697, 727 (Md. 2002) (Raker, J., concurring). In that situation, the Constitution forbids any adverse inferences because allowing such inferences would burden the defendant's right not to incriminate himself. U.S. Const. amend. V. Here though, the defendants tried to help their case with an inference from another

---

[6]Nothing in the record suggests that the defendants requested that the government grant use immunity to Gonzalez. See infra. n.6.

witness's privilege invocation. Such tactics implicate the Federal Rules of Evidence, but not the Fifth Amendment, because no party sought to use Gonzalez's privilege invocation against him in a criminal proceeding. See United States v. Deutsch, 987 F.2d 878, 884 (2d Cir. 1993).

But even though arguing the inference would not have violated Gonzalez's Fifth Amendment right, the Federal Rules of Evidence further limit the defendants' compulsory-process rights. Taylor v. Illinois, 484 U.S. 400, 410 (1988) ("The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."). Federal Rule of Evidence 401 requires that the evidence be relevant. And Rule 403 gives the trial court considerable discretion to exclude evidence when the danger of unfair prejudice outweighs the evidence's probative value.

Very rarely will these rules allow a party to argue inferences from a witness's privilege invocation. See United States v. Doddington, 822 F.2d 818, 822 (8th Cir. 1987) ("[A] defendant does not have the right to call a witness to the stand simply to force invocation of the right against self-incrimination in the presence of the jury.") (citing United States v. Lyons, 703 F.2d 815, 818 (5th Cir. 1983)). A third party's privilege invocation is not often relevant. And even if the party seeking to argue the inference concocts a reason that the silence may be relevant, the danger of unfair prejudice usually outweighs the probative value because there is no way the opponent can test the meaning attributed to the invocation. Deutsch, 987 F.2d at 884. On cross-examination, a witness who is asked why she invoked the privilege will undoubtedly respond with another privilege assertion. Also, due to the courtroom drama an invocation creates, the jury is likely to place far too much emphasis upon an ambiguous invocation. Id. Thus, absent extraordinary circumstances, trial courts should exercise their discretion to forbid parties from calling witnesses who, when called, will only invoke a privilege. United States v. Castro, 129 F.3d 226, 231 (1st Cir. 1997); Deutsch, 987 F.2d at 884; see Doddington, 822 F.2d at 822. The district

court in this case did not abuse its discretion when it refused to require Gonzalez to assert his privilege in the jury's presence.

Finally, we reject the defendants' argument that, once the district court prevented the defendants from calling Gonzalez, it should have stricken the testimony relating to his statements from the record. Defendants rely upon a line of cases that are much different from this one. See, e.g., United States v. Humphery, 696 F.2d 72, 75 (8th Cir. 1982). In Humphery, the government called a witness, the witness testified on direct, and then the witness invoked the privilege to prevent the defendant from cross-examining the witness. See id. In that situation, the trial court must sometimes strike the testimony because a defendant has a constitutional right to cross-examine a witness who testifies against him at trial. Id. ("[I]f the witness' refusal to answer prevents the defendant from directly assailing the truth of the witness' testimony, the court should strike at least the relevant portion of the testimony."). But when a statement is admissible as a co-conspirator statement, the Constitution gives the defendant, at most, the right to confront the witness who recounts the statement. White, 502 U.S. at 356. That is, the very essence of the firmly-rooted-hearsay-exception doctrine is that introducing those statements without cross-examination of the declarant does not violate the Confrontation Clause. While the defendant can call the declarant as a witness, he cannot do so when, as here, the declarant's only "testimony" will be an inadmissible privilege invocation. See Taylor, 484 U.S. at 410.[7]

_____

[7]We understand the defendants' frustration in this case. The government offered Gonzalez's statements against them, but they could not call him to the stand. There is good reason to allow the Fifth Amendment to trump the Sixth, but in many cases like this one the conflict between those two Amendments can be avoided by a grant of "use immunity." John G. Douglass, Confronting the Reluctant Accomplice, 101 Colum. L. Rev. 1797, 1874 (2001); see generally Note, The Sixth Amendment Right to Have Use Immunity Granted to Defense Witnesses, 91 Harv. L. Rev. 1266 (1978). Courts in this circuit cannot grant "judicial" use immunity, United States v.

The trial court did not err by refusing to strike the testimony about Gonzalez's statements. If Gonzalez had been absent from the trial, there is no question the government could have offered the testimony about his statements. It hardly makes sense, then, to argue that the trial court should have stricken the government's testimony after it determined that Gonzalez would only invoke his privilege. In other words, if the testimony about Gonzalez's statements was admissible without him being present, it surely did not become inadmissible when the court determined that Gonzalez would provide no relevant testimony if called.

## B.    Reyes's Firearm Conviction

The jury convicted Reyes of possessing and carrying a firearm in furtherance of and in relation to a drug offense. 18 U.S.C. § 924(c). Reyes filed a motion for judgment of acquittal, arguing that the evidence was legally insufficient to support this charge. He argues that the court erred when it denied this motion because the government did not prove that he possessed the gun "in furtherance of" a drug transaction.

Our standard of review is deferential. We review the evidence in the light most favorable to the verdict and draw all reasonable inferences that support the verdict.

---

Stewart, 122 F.3d 625, 627 (8th Cir. 1997), but they can protect the defendant's right to compulsory process. The defendants in this case did not request use immunity, and the trial court had no obligation to request it on their behalf. We pause to note, however, that in cases like this–where the witness has already pleaded guilty and the prosecution has already gathered its evidence–the burden of granting use immunity is not high, and rarely deters the prosecution from granting such immunity when it needs a witness's testimony. And it is the defendant, not the government, who has rights to confrontation and compulsory process. Peter W. Tague, The Fifth Amendment: If an Aid to the Guilty Defendant, an Impediment to the Innocent One, 78 Geo. L.J. 1, 50-51 (1989).

Brown, 346 F.3d at 813. To succeed, Reyes must establish that, even though his jury did convict him, no reasonable jury could have found him guilty beyond a reasonable doubt. See id.

A reasonable jury could have found that Reyes possessed the gun in furtherance of and in relation to a drug offense. "The term furtherance . . . should be given its plain meaning, the act of furthering, advancing, or helping forward." United States v. Hamilton, 332 F.3d 1144, 1149 (8th Cir. 2003) (internal marks and citations omitted); cf. Smith v. United States, 508 U.S. 223, 236-37 (1993) (noting that the term "in relation to" is expansive and includes bartering with a weapon for drugs). Reyes does not deny that he possessed a firearm. Nor does he deny that he gave the gun to Cooper. Instead, Reyes and Cooper disagree about why Reyes gave Cooper the gun. Reyes's appellate arguments were proper in jury argument, but they fail under our standard of review. Perhaps a reasonable jury could have believed his version of why he gave Cooper the gun. But we affirm because, given the evidence presented at trial, a reasonable jury could have found that Reyes was testing Cooper's credibility, and that such a trust-seeking transaction "helped forward" the later transaction in which Reyes sold Cooper drugs, telling him that he "trusted" him.

## III.   CONCLUSION

We affirm.

_____