# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

————————

No. 03-1900

————————

Rodney Clay Evans,                        *
                                          *
            Appellant,                    *
                                          *   Appeal from the United States
      v.                                  *   District Court for the
                                          *   Western District of Missouri.
Allen Luebbers, Superintendent,           *
Potosi Correctional Center,               *
                                          *
            Appellee.                     *

————————

Submitted: January 14, 2004
Filed: June 10, 2004

————————

Before LOKEN, Chief Judge, FAGG and BOWMAN, Circuit Judges.

————————

BOWMAN, Circuit Judge.

Rodney Clay Evans was convicted of first-degree murder in Missouri and was sentenced to life in prison for killing his estranged wife, Sheilah, by drowning her in the family pool. After he exhausted his state appellate and post-conviction remedies, he filed this 28 U.S.C. § 2254 (2000) habeas corpus petition by which he sought to have his conviction vacated. The District Court[1] denied the petition but granted a certificate of appealability, which we enlarged. We affirm.

————————

[1]The Honorable Dean Whipple, Chief Judge, United States District Judge for the Western District of Missouri.

In his appeal, Evans raises five issues for our consideration. Our review of these claims is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996, pursuant to which we may not grant a writ of habeas corpus with respect to any issue decided by a state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court." 28 U.S.C. § 2254(d)(1), (2); see also Penry v. Johnson, 532 U.S. 782, 792–93 (2001) (explaining § 2254(d)(1)'s legal standard).[2] In reviewing a district court's decision denying a § 2254 petition, we review any findings of fact for clear error and conclusions of law de novo. King v. Bowersox, 291 F.3d 539, 540 (8th Cir.), cert. denied, 537 U.S. 1093 (2002).

---

[2]In Penry, the Court reiterated its interpretation of § 2254(d)(1)'s "contrary to" and "unreasonable application of" federal law standards.

> A state court decision will be "contrary to" our clearly established precedent if the state court either "applies a rule that contradicts the governing law set forth in our cases," or "confronts a set of facts that are materially indistinguishable from a decision of this Court and neverless arrives at a result different from our precedent." A state court decision will be an "unreasonable application of" our clearly established precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."
>
> . . . Distinguishing between an unreasonable and an incorrect application of federal law, we clarified that even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable.

532 U.S. at 792–93 (citations omitted).

Evans first argues that there was insufficient evidence to find him guilty beyond a reasonable doubt. Therefore, he claims, his conviction is constitutionally invalid. See In re Winship, 397 U.S. 358, 364 (1970). In the § 2254 setting, we must consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) ("[U]nder 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Id. at 324). We also presume that the findings of fact made by a state court are correct unless the petitioner rebuts that presumption by clear and convincing evidence, 28 U.S.C. § 2254(e)(1); Hall v. Luebbers, 341 F.3d 706, 712 (8th Cir. 2003), which Evans has not done. Based on the evidence presented at trial, the Missouri Court of Appeals held that a jury could properly convict Evans of first-degree murder and could have found:

> 1. That [Evans] had told people he had thought about killing Sheilah.
> 2. That Sheilah was planning to get a divorce and that [Evans] was upset about the possibility of the divorce and having to divide the marital property and perhaps lose his home.
> 3. That [Evans] had been informed by his attorney that he would be better off financially if something were to happen to his wife before the divorce.
> 4. That [Evans] made statements to a number of people about his wife ending up in the swimming pool and to one person that if his wife did not forget about the divorce "they're liable to find her floating in the pool."
> 5. That Sheilah was frightened of [Evans], she had gotten an ex parte restraining order against him at one point; she told various people that if something happened to her they should not assume it was an accident.
> 6. That [Evans] picked Sheilah up at the Tulsa Airport on the night of September 8, 1994; on the way back to Springfield Sheilah had told [Evans] that she was planning on going through with the divorce; [Evans] and Sheilah arrived home between 1:00 and 1:30 a.m. on

September 9, 1994; and paramedics arrived at 2:55 a.m. to find that Sheilah had drowned in the pool.

7. That the autopsy revealed fresh bruising on Sheilah's head consistent with blows from a human fist. The bruises were made within approximately two hours prior to death. The bruises were inconsistent with a fall into the pool. They resulted from "pretty good blows [causing] this amount of hemorrhage." According to the pathologist such bruising showed a "significant possibility" of homicide.

8. That [Evans's] versions of the events of that night weren't consistent.

State v. Evans, 992 S.W.2d 275, 294–95 (Mo. Ct. App. 1999). Based on the evidence, and applying to it the Jackson v. Virginia standard (as did the Missouri Court of Appeals), we are satisfied that the Missouri Court of Appeals' resolution of this issue was not contrary to, or an unreasonable application of, clearly established federal law. The District Court did not err when it denied the petitioner relief on this claim.

Evans next raises his sufficiency-of-the-evidence claim in another form and insists that the trial court erred when it admitted his numerous incriminating statements into evidence without sufficient independent proof of the *corpus delicti*. See State v. Edwards, 116 S.W.3d 511, 544 (Mo. 2003) (en banc) ("[O]ut-of-court confessions, statements, or admissions by the accused are generally not admissible unless they are corroborated by independent evidence, either circumstantial or direct, showing the *corpus delicti* of the crime."), cert. denied, 124 S. Ct. 1417 (2004); State v. McQuinn, 235 S.W.2d 396, 397 (Mo. 1951) (en banc). As already noted, a conviction obtained without proof beyond a reasonable doubt is constitutionally invalid and we may review a claim that a conviction is wanting for lack of such proof under the standard established in Jackson v. Virginia. Regarding the *corpus delicti* issue as it is pled by Evans, however, no constitutional rights are at stake. Rather, his claim is based on Missouri's *corpus delicti* requirement that the prosecution present *some* independent proof of the death of the victim and that the death was caused by human agency (i.e., not by accident or suicide), usually prior to introducing

-4-

incriminating statements made by the defendant.  McQuinn, 235 S.W.2d at 397 ("It is undoubtedly the rule that confessions of a crime not made in open court or before a committing magistrate and without proof aliunde that a crime has been committed will not sustain a conviction.  However, . . . full proof of the corpus delicti independent of the defendant's extrajudicial confessions is not required.  'On the contrary, what seemed to be only slight corroborating facts have been held sufficient.'" (citations omitted)).  Missouri's particular formulation of the *corpus delicti* rule is of an evidentiary nature and we may not review any evidentiary rulings unless they implicate federal constitutional rights.  Estelle v. McGuire, 502 U.S. 62, 68 (1991).[3]  The abstract constitutional right at issue here is the Fourteenth Amendment's requirement that Evans be found guilty only where there is evidence to convince a reasonable trier of fact beyond a reasonable doubt.  As we already explained, the Missouri Court of Appeals' determination that this requirement was

---

[3]Evans argues that our prior decisions, see, e.g., Howard v. Caspari, 99 F.3d 895, 897 (8th Cir. 1996), cert. denied, 520 U.S. 1234 (1997), and Lufkins v. Leapley, 965 F.2d 1477, 1482 (8th Cir.), cert. denied, 506 U.S. 895 (1992), show that the *corpus delicti* doctrine is of a constitutional dimension.  We pause here to note that these earlier cases—and the Supreme Court decisions from which they stem—Wong Sun v. United States, 371 U.S. 471, 488–89 (1963), and Smith v. United States, 348 U.S. 147, 152 (1954)—announce a rule with somewhat different bounds than the rule Evans now urges upon us.  Though the phrase *corpus delicti* permeates these cases, the clear constitutional rule announced in these decisions is the requirement that a defendant's conviction not rest solely upon his or her confession or extra-judicial statements; that is, there must be independent evidence that corroborates these statements.  Whatever Missouri's *corpus delicti* rule might require, it is clear that the federal constitutional requirements have been met in this case, for these merely necessitate "that the corroborative evidence does not have to prove the offense beyond a reasonable doubt, or even by a preponderance, as long as there is substantial independent evidence that the offense has been committed, and the evidence as a whole proves beyond a reasonable doubt that defendant is guilty."  Smith, 348 U.S. at 156.

fulfilled was not contrary to, or an unreasonable application of, clearly established federal law. Accordingly, this claim was properly denied.

As his third point, Evans urges that the prosecution violated Brady v. Maryland's requirement that the prosecution disclose evidence favorable to the accused. 373 U.S. 83 (1963). Specifically, Evans argues that his rights as defined by Brady were violated because the State did not disclose that Dr. Spindler, the State's pathologist, was previously disciplined for illegally prescribing narcotics and had his license suspended in Illinois. We agree with the District Court that this claim was procedurally defaulted, notwithstanding the fact that the Missouri Court of Appeals reviewed the claim for plain error after it concluded that the issue had not been raised at trial. Evans, 992 S.W.2d at 293–94. Although procedurally defaulted, we may review this claim if Evans can show cause for the default and prejudice from the alleged violation of his rights. Coleman v. Thompson, 501 U.S. 722, 750 (1991). Evans has shown neither. On the record presented to us, Evans has not made a showing that the prosecution knew of this information prior to, or during, the trial and deliberately withheld it; that is, he has not shown cause. Cf. Strickler v. Greene, 527 U.S. 263, 281–82 (1999) (explaining components of a Brady violation). We therefore do not reach the issue of prejudice and the District Court did not err when it denied Evans relief on his Brady claim.

Evans next urges that his Sixth Amendment Confrontation Clause rights were violated when the trial court admitted—through the testimony of some ten different witnesses—numerous out-of-court statements made by Evans's wife, the victim. The trial court admitted statements suggesting that Sheilah Evans was scared of the petitioner (e.g., "I'll be like another Nicole Simpson." Trial Tr. at 486; "This might be another O.J. Simpson case." Trial Tr. at 341), that Sheilah Evans was verbally and physically abused by the petitioner, that Sheilah Evans intended to divorce the petitioner, and that Sheilah Evans obtained a protective order against the petitioner. Until recently, Ohio v. Roberts, permitted the introduction of hearsay statements

against a criminal defendant if the evidence was shown to be dependable because it "falls within a firmly rooted hearsay exception" or "it contains 'particularized guarantees of trustworthiness.'" Lilly v. Virginia, 527 U.S. 116, 125 (1999) (plurality opinion) (quoting Ohio v. Roberts, 448 U.S. 56, 66 (1980)). The District Court determined that the admission of these statements did not involve an unreasonable application of clearly established federal law because the bulk of the statements fell within firmly rooted exceptions to the hearsay rule. We agree. Some of Sheilah Evans's statements were properly admitted as statements made by her for the purpose of obtaining a medical diagnosis. See White v. Illinois, 502 U.S. 346, 355 n.8 (1992); United States v. Sumner, 204 F.3d 1182, 1185 (8th Cir. 2000). And, as the Missouri Court of Appeals determined, the bulk of the statements were properly admitted as evidence of Sheilah Evans's mental state—which the defense put into question when it implied she committed suicide—under the state-of-mind exception. Lenza v. Wyrick, 665 F.2d 804, 810 (8th Cir. 1981) (holding that victim's "statements were hearsay admissible under the 'state of mind' exception to the hearsay rule and constitutionally permissible under Ohio v. Roberts." (citations omitted)); see also Hayes v. York, 311 F.3d 321, 324–25 (4th Cir. 2002), cert. denied, 538 U.S. 979 (2003). The District Court and the Missouri Court of Appeals both noted that some of the statements regarding physical abuse should not have been admitted, but because the substance of most of these statements came into evidence through the petitioner's own inculpatory statements, any unfair prejudice was negligible.

We are cognizant that the Supreme Court's recent decision in Crawford v. Washington, — U.S. —, 124 S. Ct. 1354 (2004), arguably bears on this case. In Crawford, the Court overruled Ohio v. Roberts and held that "testimonial" hearsay is inadmissable against a criminal defendant unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. Crawford, 124 S. Ct. at 1374. We doubt Crawford's application to the case at hand for at least two reasons. First, the Crawford Court did not suggest that this doctrine would apply retroactively and the doctrine itself does not appear to fall within either of the two

narrow exceptions to <u>Teague v. Lane</u>'s non-retroactivity doctrine. 489 U.S. 288 (1989); <u>see also</u>, <u>Williams v. Taylor</u>, 529 U.S. 362, 411–13 (2000) (discussing <u>Teague</u> and AEDPA).[4] Second, even if <u>Crawford</u>'s rule could apply retroactively as a general proposition, by the strict terms of its holding, <u>Crawford</u> does not apply to this particular case. We recognize that there is language in <u>Crawford</u> that could arguably encompass some of Sheilah Evans's statements. <u>See</u> <u>Crawford</u>, 124 S. Ct. at 1364 (discussing "[v]arious formulations of this core class of 'testimonial' statements"). We also recognize that the Court declined to give a full definition of what "testimonial" statements are, specifically saving that question for another day. <u>Id.</u> at 1374. Still, by its terms, <u>Crawford</u>'s holding applies "to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." <u>Id.</u> The hearsay statements of Sheilah Evans do not fit this definition. <u>See</u> <u>United States v. Reyes</u>, 362 F.3d 536, 540 n.4 (8th Cir. 2004) (noting testimonial vs. non-testimonial statement distinction).

In sum, because the decision of the Missouri Court of Appeals denying Evans relief on his Confrontation Clause claims was not contrary to, or an unreasonable application of, clearly established federal law, the District Court did not err when it denied this claim.

As his final claim, Evans urges that his Sixth Amendment right to effective assistance of counsel was violated because his *trial* counsel failed to present expert

---

[4]The two exceptions to <u>Teague</u>'s non-retroactivity rule are for: (1) new rules that place "'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe,'" <u>Teague</u>, 489 U.S. at 311 (plurality opinion) (quoting <u>Mackey v. United States</u>, 401 U.S. 667, 692 (1971) (Harlan, J., concurring in part and dissenting in part)), and (2) "watershed rules of criminal procedure" that increase the accuracy of the judicial process, <u>id.</u> at 311 (plurality opinion).

testimony to refute the State's expert witness, Dr. Spindler. The District Court concluded that this claim was procedurally defaulted because it had not been presented to the Missouri Court of Appeals during Evans's direct appeal. We agree. Still, we may review this claim if Evans can show cause for the default and prejudice from the alleged violation of his rights. Coleman, 501 U.S. at 750. Evans contends that the ineffective assistance of his *appellate* counsel is the cause for his failure to properly present the issue in state court. In order for ineffective assistance of counsel to itself be cause to excuse a procedural default, the ineffective assistance must rise to the level of an independent constitutional violation. Edwards v. Carpenter, 529 U.S. 446, 451–52 (2000). Thus, the assistance rendered must have been constitutionally substandard and prejudice must have resulted therefrom. Strickland v. Washington, 466 U.S. 668, 687 (1984). Evans concedes, however, that his direct-appeal counsel's omission of the claim was a strategic decision made after "considering the relative strength of all of the issues." Appellant's Supp. Br. at 6. This concession is fatal to Evans's claim of ineffective assistance of counsel, inasmuch as as we have frequently recognized that the strategic and tactical decisions made by counsel, though they may appear unwise in hindsight, cannot serve as the basis for an ineffective-assistance claim under Strickland. See, e.g., Graham v. Dormire, 212 F.3d 437, 440 (8th Cir. 2000). Because Evans cannot show his counsel's actions on direct appeal fell below the level guaranteed by the constitution, he cannot show cause that will excuse his procedural default.[5] We conclude that the District Court properly refused to reach this claim.

For the foregoing reasons, the judgment of the District Court is affirmed.

_____

---

[5]We also reject Evans's claim that he has passed through the "actual innocence" gateway on the strength of, inter alia, the deposition of Dr. Dix, another pathologist. See Schlup v. Delo, 513 U.S. 298, 327 (1995) ("[P]etitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.").