# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3252

_____

| | |
|---|---|
| Jeffrey R. Ferguson, | * |
| | * |
| Petitioner - Appellant, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * Eastern District of Missouri. |
| Donald P. Roper, | * |
| | * |
| Respondent - Appellee. | * |

_____

Submitted: September 16, 2004
Filed: March 14, 2005

_____

Before LOKEN, Chief Judge, BEAM and SMITH, Circuit Judges.

_____

LOKEN, Chief Judge.

Jeffrey Ferguson was convicted and sentenced to death in state court for the abduction, rape, and murder of Kelli Hall, a seventeen-year-old gas station attendant. The Supreme Court of Missouri affirmed the conviction and sentence and the denial of state post-conviction relief. State v. Ferguson, 20 S.W.3d 485 (Mo. banc 2000). Ferguson then filed this petition for a federal writ of habeas corpus under 28 U.S.C. § 2254. The district court[1] denied the petition, and Ferguson appealed. A certificate

_____

[1]The HONORABLE CATHERINE D. PERRY, United States District Judge for the Eastern District of Missouri.

of appealability was granted on two issues: whether the district court erred in denying, without a hearing, Ferguson's claim that the State violated his due process rights under Arizona v. Youngblood, 488 U.S. 51 (1988), by the post-conviction loss or destruction of a potentially useful surveillance tape; and whether the state trial court violated his Confrontation Clause rights as recently construed in Crawford v. Washington, 541 U.S. 36 (2004), when it admitted testimony of incriminating out-of-court statements by Ferguson's co-defendant. We affirm.

## I. The Youngblood Issue.

Kelli Hall worked at a service station in Saint Charles, Missouri. Hall's frozen, naked body was discovered on a nearby farm three weeks after a witness saw a man resembling Ferguson forcing her into a truck identical to Ferguson's vehicle outside the service station on the night she disappeared. An autopsy revealed that Hall had been raped before she was strangled to death. Ferguson and his friend, Kenneth Ousley, were seen with Ferguson's truck across the street from the service station shortly before Hall was abducted. During the days following Hall's disappearance, Ferguson and Ousley tried to sell three of her rings. Ferguson warned a potential purchaser that the rings were "very hot," and he told another friend not to tell anyone he was in Saint Charles on the night of the abduction. He also asked a body shop to repaint his vehicle because the police were looking for it.

Laboratory tests showed that semen found inside Hall came from a person with Ferguson's blood type, DNA found in a semen stain on Hall's coat matched Ferguson's, and fibers found on Hall's clothing were "indistinguishable" from the carpeting in Ferguson's truck. A blonde hair matching Hall's was found on Ousley's shoe, and a pubic hair indistinguishable from Ousley's was found on Hall's socks. Hall's body was found partially obscured by steel partitions that could not have been moved by one man.

Ferguson and Ousley were charged with first degree murder. Ousley, who later pleaded guilty and received a life sentence, did not testify at Ferguson's trial. Ferguson did testify. He admitted meeting Ousley at the time and place in question but said that he could not have raped and murdered Hall because he was drunk and "passed out" in his vehicle (contrary to his statement to police following his arrest). The jury convicted Ferguson of first degree murder and recommended the death penalty, which the trial court imposed.

Ferguson filed a petition for state post-conviction relief that included a claim that the prosecution failed to disclose unspecified exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963). While investigating post-conviction claims, Ferguson's attorneys learned that the service station where Hall worked operated a video surveillance system to monitor the station's interior public areas, and that the station manager had turned over to the police a videotape from the night Hall was abducted. The Saint Charles Police Department confirmed the existence of a "security video." When the prosecutor refused Ferguson's request to view the videotape, he filed a motion to compel its disclosure. The post-conviction court granted the motion, but when Ferguson's investigator returned to the police station to view the tape, it could not be found. Ferguson then filed a motion for new trial, arguing that the prosecution's failure to disclose the surveillance videotape prior to trial violated its duty to disclose material exculpatory evidence under Brady. The post-conviction trial court denied that motion and Ferguson's other claims.

The Supreme Court of Missouri consolidated Ferguson's direct and post-conviction appeals and upheld his conviction and sentence. On the surveillance tape issue, the Court rejected Ferguson's Brady claim because it was not alleged with sufficient specificity in the post-conviction motion, Ferguson failed to show that the videotape evidence was exculpatory, and no prejudice resulted. The Court rejected on two grounds the related claim that the State, by losing or destroying the videotape, had violated the discovery order permitting Ferguson's post-conviction counsel to

view the videotape. First, the Court explained, Ferguson was not entitled to discovery on a Brady claim that "was not actionable from the start." Second, the videotape was lost or destroyed by the time Ferguson requested its disclosure, and "[a]bsent a showing of bad faith on the part of the police or prosecutor, the failure to preserve even potentially useful evidence does not constitute a denial of due process. Arizona v. Youngblood, 488 U.S. 51, 58 (1988)." Ferguson, 20 S.W.3d at 504.

In the district court, Ferguson asserted that Youngblood rather than Brady provides the relevant federal constitutional rule governing the State's loss or destruction of the videotape. In Youngblood, the Supreme Court declined to extend the prosecutor's absolute duty under Brady to produce materially exculpatory evidence to cases where the State failed to preserve evidence that was only "potentially useful" at trial. Rather, the Court held "that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." 488 U.S. at 58, followed in Illinois v. Fisher, 540 U.S. 544, 547-48 (2004). The district court rejected Ferguson's Youngblood claim, and his request for an evidentiary hearing on that claim, concluding that he made no showing the tape disappeared due to bad faith, as opposed to mere negligence, and that the tape was not "potentially useful" evidence because Ferguson's admission he was in the vehicle before the abduction made him capable of participating in the crimes even if the videotape had revealed that another person entered the service station with Ousley.

On appeal, Ferguson abandons his Brady claim and argues that he is entitled to habeas relief, or at least an evidentiary hearing, under Youngblood.[2] We disagree.

---

[2]Respondent argues for the first time on appeal, without citation to relevant authority, that Ferguson "cannot allege that the Missouri Supreme Court improperly applied Youngblood when petitioner did not raise, or even cite, Youngblood to the Missouri Supreme Court." This contention -- in effect a claim of procedural bar -- is without merit. The Supreme Court of Missouri no doubt recognized that Brady and

<u>Youngblood</u> stated the applicable constitutional principle when potentially useful evidence is lost or destroyed *before trial.* Here, uncontroverted evidence established that the surveillance videotape existed until long after the trial. Thus, the videotape was evidence *undiscovered* by the defense, not evidence *unavailable* to the defense. Various post-conviction claims may be available to a defendant in this situation, but they are not <u>Youngblood</u> claims. For example, if the videotape was materially exculpatory, Ferguson has a post-conviction claim that the prosecution violated its absolute duty under <u>Brady</u> to disclose such evidence in its possession. Ferguson raised that claim in state court, and initially in the district court, but has abandoned it on appeal. Alternatively, if Ferguson's trial counsel should have discovered the videotape prior to trial, for example by interviewing the service station manager, that could give rise to an ineffective assistance of counsel claim. But no such claim was raised in state court, even though Ferguson asserted countless other ineffective assistance claims. Finally, Ferguson could have argued that the videotape was newly discovered evidence warranting a new trial under state law, an argument not made to the state post-conviction court.

In these circumstances, reviewing the state court decision under the deferential standard enacted by the Anti-Terrorism and Effective Death Penalty Act of 1996, it is apparent that the Supreme Court of Missouri's application of <u>Youngblood</u> did not result in a decision "that was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C.§ 2254(d)(1); <u>see</u> <u>Johnston v. Luebbers,</u>

---

<u>Youngblood</u> both involve, in the Supreme Court's words, "what might loosely be called the area of constitutionally guaranteed access to evidence," <u>Youngblood</u>, 488 U.S. at 55 (quotation omitted). Accordingly, the Missouri Supreme Court treated Ferguson's <u>Brady</u> claim as including a potential <u>Youngblood</u> issue and addressed that issue on the merits. <u>Ferguson</u>, 20 S.W.3d at 504. Federal habeas review is not procedurally barred when the state court's disposition of a federal constitutional claim "fairly appears to rest primarily on federal law." <u>Coleman v. Thompson</u>, 501 U.S. 722, 735 (1991) (quotation omitted); <u>see</u> <u>Walton v. Caspari</u>, 916 F.2d 1352, 1356-57 (8th Cir. 1990), <u>cert. denied</u> 499 U.S. 931 (1991).

288 F.3d 1048, 1051 (8th Cir. 2002), <u>cert. denied</u>, 527 U.S. 1166 (2003). Moreover, because <u>Youngblood</u> does not apply to evidence not lost or destroyed until after trial, the district court did not err in denying Ferguson's request for discovery and an evidentiary hearing to explore whether the police acted in bad faith in losing or destroying the videotape during his post-conviction proceedings.

## II. The <u>Crawford</u> Issue.

At trial, Ferguson's friend Michael Thompson testified that, after Hall's disappearance, Ousley asked Thompson whether he knew "where to get either money or cocaine" for two of Hall's rings. When Thompson asked Ousley where the rings came from, Ousley responded that "him [Ousley] and Jeff [Ferguson] did a job in St. Charles" and that "Jeff had a third ring." The trial court overruled Ferguson's objection that this testimony was inadmissible hearsay. Citing only state cases, the Supreme Court of Missouri upheld that ruling on the ground that Thompson's testimony was admissible under the hearsay exception for conspirator statements in furtherance of a conspiracy. 20 S.W.3d at 496-97. In the district court, Ferguson argued that this ruling violated his Confrontation Clause rights as construed in <u>Ohio v. Roberts</u>, 448 U.S. 56 (1980), and its progeny. The district court ruled that Ousley's hearsay statements "bear particularized guarantees of trustworthiness," one test under <u>Roberts</u>, and alternatively that any error was harmless beyond a reasonable doubt.

While this appeal was pending, the Supreme Court decided <u>Crawford v. Washington</u>, 541 U.S. 36 (2004), which overruled <u>Roberts</u>, at least in part. <u>Crawford</u> held that the Confrontation Clause bars admission of "testimonial" hearsay "unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine." <u>Evans v. Luebbers</u>, 371 F.3d 438, 444 (8th Cir. 2004). Ferguson now argues that Ousley's out-of-court statements were "testimonial" and therefore barred by <u>Crawford</u>'s new categorical rule. In <u>Crawford</u>, the Court gave examples of

testimonial hearsay but declined to articulate a comprehensive definition of the term. See 541 U.S. at 54 & n.10.

We then expanded Ferguson's certificate of appealability "to include the Sixth Amendment confrontation issue in light of . . . Crawford." However, in a subsequent decision, we held that "co-conspirator statements are nontestimonial." United States v. Reyes, 362 F.3d 536, 540 n.4 (8th Cir.), cert. denied 124 S. Ct. 2926 (2004). Ferguson argues that Reyes does not bar his Crawford claim because Ousley's statements to Thompson were not in furtherance of the conspiracy. That assertion is contrary to the facts as found by the Supreme Court of Missouri. It is also irrelevant to the question whether Ousley's private statements to Thompson were testimonial in nature. See Horton v. Allen, 370 F.3d 75, 84 (1st Cir. 2004); United States v. Manfre, 368 F.3d 832, 838 n.1 (8th Cir. 2004). Accordingly, even if applied retroactively to this habeas case,[3] the categorical rule in Crawford does not govern this case because Ousley's statements were not "testimonial."

Applying the Supreme Court's pre-Crawford decisions to this nontestimonial hearsay issue, we reject Ferguson's Confrontation Clause claim for the reasons stated by the Supreme Court of Missouri and by the district court. The Supreme Court's discussion in Crawford raises some doubt whether the Roberts reliability analysis remains good law when applying the Confrontation Clause to nontestimonial hearsay. See 541 U.S. at 52 ("Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of

---

[3]We have noted that Crawford does not appear to fall within the narrow exceptions to non-retroactivity under Teague v. Lane, 489 U.S. 288 (1989). Evans, 371 F.3d at 444. At least two circuits have held that Crawford is not retroactive. Brown v. Uphoff, 381 F.3d 1219, 1226-27 (10th Cir. 2004); Hiracheta v. Attorney General of California, 105 Fed. Appx. 937, 938 (9th Cir. 2004) (unpublished). We need not decide the question in this case.

hearsay law."). But eliminating <u>Roberts</u> reliability review altogether would not entitle Ferguson to federal habeas relief, so we need not decide the issue.

The judgment of the district court is affirmed.

_____