# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-4208

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | *   Appeal From the United States |
| v. | *   District Court for the |
| | *   District of Minnesota. |
| Donald James Brun, Jr., | * |
| | * |
| Appellant. | * |

_____

Submitted: June 21, 2005
Filed: August 1, 2005

_____

Before MELLOY, HEANEY, and GRUENDER, Circuit Judges.

_____

HEANEY, Circuit Judge.

Donald James Brun, Jr. appeals a jury verdict finding him guilty of assault with a dangerous weapon, in violation of 18 U.S.C. § 113(a)(3), on the Red Lake Indian Reservation. The district court[1] sentenced Brun to three years' probation. Brun appeals the conviction, arguing that testimony used against him was hearsay and violated the Confrontation Clause. We affirm.

_____

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

I. Background

Shortly before 11:00 p.m. on January 24, 2000, the Red Lake Police Department received two 911 calls from the home of Donald Brun and Nicole Oakgrove. During the first call, Jonathan Carlson, Oakgrove's 12-year-old nephew, told the police dispatcher that Brun and Oakgrove were arguing, and requested the presence of an officer. Oakgrove made the second call about twenty minutes later, and told the dispatcher that Donald had been at the house, was drunk and in possession of a rifle, which he had fired into the bathroom. Oakgrove also stated that Brun left the residence in her pickup truck.

Red Lake Police Officer Charles Grolla went to the Brun/Oakgrove residence in response to the calls. The front door was open, and Oakgrove was sitting at the kitchen table, crying. Carlson was also present. Grolla asked what was going on, and Oakgrove told him Brun had come home drunk, that they had been fighting, and that he had fired a rifle in the bathroom while she was in it. Brun had fired the rifle a couple times outside the house, demanded money from Oakgrove, then left the residence in her truck. Grolla collected a spent 30-06 shell casing given to him by Carlson, asked Oakgrove a few questions, and inspected the bullet hole in the bathroom wall. Although Grolla completed a report regarding the assault when he returned to the police station later that night, he never took a formal statement from Oakgrove regarding the shooting.

Two years after the shooting, in January of 2002, Oakgrove met with Special Agent Russell Traurig of the Bureau of Alcohol, Tobacco, Firearms and Explosives. During the meeting, Traurig showed Oakgrove Grolla's report about the shooting incident and asked her to confirm that the report was accurate. Oakgrove stated that it was, with the exception of a few minor details. In May 2003, the government charged Brun with being a prohibited person in possession of a firearm on the date of the alleged assault. The district court ruled the defendant was not a prohibited

person under federal law and rejected defendant's guilty plea. The government dismissed the case on April 20, 2004, and reindicted defendant on the same day, this time alleging assault with a dangerous weapon.

At the time of trial, four years after the alleged assault, Oakgrove was pregnant with her second child with Brun. In response to service of a trial subpoena, Oakgrove appeared at trial with counsel and refused to testify absent a grant of immunity. Despite a subsequent grant of immunity, Oakgrove continued to refuse to testify. The district court ordered her to do so.

At trial, the government introduced three hearsay statements in support of its position that Brun aimed the rifle at Oakgrove when he fired it: Carlson's 911 call, Oakgrove's 911 call, and Officer Grolla's police report. The statements were admitted into evidence as excited utterances, and were inconsistent with Oakgrove's testimony at trial because they suggested she was in front of the rifle when Brun fired it. On the stand, Oakgrove testified that when Brun fired the rifle, she thought she was alongside him, but she could not recall specifically. She stated she could not remember what she had said to Grolla when he came to her home in response to the 911 calls on the night of the assault. She testified Carlson had done all the talking, and that she could not remember what prompted the argument with Brun, nor what was said between them during the altercation. She testified that Brun had pushed her on the bed and followed her from room to room during the altercation. At some point during the argument she went into the bathroom. When she opened the door to come out of the bathroom, Oakgrove said she saw Brun with a rifle in the vestibule leading to the bathroom. She testified that her ears were ringing badly and that she was scared after he had fired the rifle.

Brun also testified at trial. He admitted shooting the rifle in the bathroom deliberately, but denied pushing Oakgrove, shooting the rifle at her, or intending to

harm her during the incident. Carlson did not appear at trial because the government could not locate him to testify.

The jury convicted Brun of the charged offense. At sentencing, the district court departed downward from Brun's guidelines range and imposed a sentence of three years of probation.[2] This appeal followed.

## II. Discussion

On appeal, Brun asserts that: (1) his Sixth Amendment right to confrontation was violated by the court's admission of Carlson's and Oakgrove's statements; (2) the United States improperly asked its witnesses to vouch for the victim's credibility; (3) the delay in prosecuting Brun violated his due process rights; and (4) there was insufficient evidence to prove that Brun intended to harm Oakgrove during the assault. We direct our attention to the alleged hearsay statements and decline to address the remaining issues, as we find them to be without merit.

This court reviews a district court's rulings regarding the admissibility of evidence for an abuse of discretion. United States v. Woodard, 315 F.3d 1000, 1003 (8th Cir. 2003). The same standard applies to the admission of hearsay evidence. United States v. Mitchell, 31 F.3d 628, 632 (8th Cir. 1994). The court reviews de novo the denial of an objection to the admission of evidence based on the Confrontation Clause of the Sixth Amendment. United States v. Lee, 374 F.3d 637, 643 (8th Cir. 2004). Because Brun objected to the admission of Carlson and Oakgrove's statements on Confrontation Clause grounds, as well as on hearsay grounds, the court's review is de novo. If evidence is admitted in violation of a defendant's confrontation rights, this court considers whether the error was harmless beyond a reasonable doubt. Id.

---

[2]The government does not appeal Brun's sentence.

Defendant first argues that the district court's admission of Carlson's statement to the Red Lake Police Dispatcher who answered his 911 call violated his Sixth Amendment right to confrontation because Carlson did not testify at trial.  In Crawford v. Washington, 541 U.S. 36 (2004), the Court held that the Confrontation Clause bars the admission of testimonial hearsay unless the declarant is unavailable and the accused has had a prior opportunity to cross-examine the declarant.  The Court did not define "testimonial," but it noted three formulations of "core" testimonial evidence:  (1) ex parte in-court testimony, including affidavits, custodial examinations, and prior testimony not subject to cross-examination; (2) extrajudicial statements contained in formalized material such as depositions; and (3) statements made under circumstances that would cause a reasonable witness to believe they could be used at trial.  Id. at 51-52.

The issue we address is whether Carlson's statements made to the police dispatcher during a 911 call are testimonial, and therefore barred from admission. The Eighth Circuit has not addressed this issue.  In State v. Wright, 686 N.W.2d 295, 302 (Minn. App. 2004), the Minnesota Court of Appeals persuasively concluded that:

> the statements made during the 911 call, moments after the criminal offense and under the stress of that event, are not "testimonial" under *Crawford*; these statements do not fit within the definitions or the examples of "testimonial" statements.  A 911 call is usually made because the caller wants protection from an immediate danger, not because the 911 caller expects the report to be used later at trial with the caller bearing witness–rather, there is a cloak of anonymity surrounding 911 calls that encourages citizens to make emergency calls and not fear repercussion.

We have no doubt that the statements of an adolescent boy who has called 911 while witnessing an argument between his aunt and her partner escalate to assault would be emotional and spontaneous rather than deliberate and calculated.  See United States v. Phelps, 168 F.3d 1048, 1054 (8th Cir. 1999) (citing United States v. Iron Shell, 633

F.2d 77, 86 (8th Cir. 1980)). We hold that Carlson's 911 call was an excited utterance, and under these circumstances, nontestimonial.

The question remains, however, whether Carlson's nontestimonial statement is admissible if the witness is unavailable. "The Supreme Court's discussion in Crawford raises some doubt whether the Roberts reliability analysis remains good law when applying the Confrontation Clause to nontestimonial hearsay." Ferguson v. Roper, 400 F.3d 635, 639 (8th Cir. 2005). The First Circuit has applied Roberts to determine whether the admission of a hearsay statement violated a defendant's Confrontation Clause rights, see Horton v. Allen, 370 F.3d 75, 84 (1st Cir. 2004), and we find that position persuasive when dealing with the admissibility of an excited utterance. Ohio v. Roberts, 448 U.S. 56, 66 (1990), permits the admission of a hearsay statement of an unavailable declarant as long as the statement "falls within a firmly rooted hearsay exception" or bears "particularized guarantees of trustworthiness." Because we have determined that Carlson's 911 call was an excited utterance, the statement meets the Roberts reliability standard. The district court did not abuse its discretion in admitting Carlson's statements to the police dispatcher.

Next, Brun argues that Oakgrove's statements made during the 911 call were hearsay, and should not have been admitted as evidence. As with Carlson's 911 call, we find that Oakgrove's 911 call is admissible as a nontestimonial statement because it was an excited utterance made within minutes after she made her 911 call. Because she was available to testify at trial, we need not apply the Roberts analysis to her nontestimonial hearsay statement.

We next consider whether statements made by a crime victim to police responding to her call for assistance shortly after the crime are testimonial. Officer Grolla arrived at the scene of the assault approximately ten minutes after Oakgrove spoke with the 911 dispatcher. When Grolla entered the residence, Oakgrove was sitting at the kitchen table, outwardly disturbed and crying. She stated she and Brun

had been fighting, he had thrown her around and fired a rifle in the bathroom while she was in it. She said Brun had stabbed himself with a knife and tried to fight Carlson. When Oakgrove spoke to Grolla, she was visibly distraught, and her spontaneous statements were not made in response to suggestive questioning. See Phelps, 168 F.3d at 1055.

We hold that Oakgrove's statements made when Grolla first appeared at the residence were also excited utterances, and therefore nontestimonial statements. The initial interaction between Oakgrove and Grolla was unstructured, and not the product of police interrogation. The district court did not abuse its discretion by admitting Oakgrove's excited utterances included in Grolla's report.[3]

On the basis of the excited utterances admitted into trial, the verdict reached by the jury was not contrary to the evidence in the record. It was for the jury to decide whether Oakgrove's inconsistent testimony supported Brun's conviction, and the district court did not abuse its discretion by sustaining its guilty verdict. For the reasons cited above, we affirm.

_____

---

[3]The district court properly determined that Oakgrove's statements identified in Grolla's report that were made after Grolla left the residence and returned were testimonial because they were made in response to Grolla's questions about whether Oakgrove was in front of the barrel when Brun fired it, and were made after Oakgrove had had an opportunity to deliberate and reflect on what she had said to Grolla.